THE CENTRAL SAVINGS BANK OF BALTIMORE *vs.* THE
MAYOR AND CITY COUNCIL OF BALTIMORE.

*Municipal Corporation—Ordinance—Opening Streets—Application—Notice—Commissioners for Opening Streets in Baltimore—Judicial notice of the Ordinances of the City of Baltimore.*

Section 838 of Article 4 of the Code of Public Local Laws of 1860, which provides that before any ordinance shall be passed for opening, extending, or widening a street in the City of Baltimore, sixty days notice of an application for its passage shall be given in two of the daily newspapers of the city, does not direct that the notice shall be published any number of times; it merely requires that it shall be given; the sufficiency of the publicity of such application being left to the determination of the City Council.

The corporate power conferred upon the City of Baltimore in respect to opening, extending, and widening of streets, is exercised by means of a Board of Commissioners, whose acts are in no respect personal, but to every intent and purpose official. They are the acts of the corporation; and no change in the individuals composing the Board, pending proceedings therein, can in any way affect the validity of the proceedings.

The Courts cannot judicially know the ordinances of the City of Baltimore. They must be brought to their attention by being proved in evidence as facts.

APPEAL from the Baltimore City Court.

Douglass street was widened and extended under the provisions of an ordinance passed by the Mayor and City Council of Baltimore. The Commissioners for opening streets having made their assessment of benefits and damages, and having assessed benefits on two lots of ground belonging to the Central Savings Bank of Baltimore, it prayed an appeal to the City Court. A motion

was made to quash the proceedings and the following reasons were assigned:

1. That legal notice was not given that an application would be made for the alleged ordinance, approved October 18, 1884, under which the proceedings in this case were had.

2. That sixty days' notice was not given of the application for the passage of said ordinance, as required by law.

3. That said application was made and said ordinance passed before the lapse of sixty days from the completion of the publication of said notice.

4. That under the Acts of Assembly in such case made and provided, and under the provisions of the ordinance for opening streets in the City of Baltimore, the Board of Commissioners for Opening Streets, in existence at the time of the passage of the ordinance for opening any street, and which begins the proceedings for such street opening, is the only board having authority to proceed therewith, (and that only after being duly sworn and constituted such board in each particular case,) and that such board so constituted must continue and complete the said proceedings, and so complete the same within six months from the expiration of their term of office.

(It was alleged that the three commissioners who constituted the Board when the ordinance was passed began the proceedings in December, 1884, but that they did not complete them; that one of them went out of office in September, 1887, and another Commissioner was appointed in his place; that another went out of office in September, 1888, and another Commissioner was appointed in his place, so that when the proceedings were completed only one of the original Commissioners remained in office.) It was admitted that a notice in the following form was published in the "Daily News" a daily afternoon newspaper published in the City of Baltimore: "Notice is hereby given, that application will be made to the Mayor

and City Council of Baltimore City, to widen Douglass street, from Aisquith street to Chestnut street, by adding to the south side thereof twenty feet and six inches, and also to extend said street so widened in a westerly direction to the east side of Gay street;" (Here follows a description of the lines of the proposed extension to Gay street,) "and also to extend said street westwardly from the west side of Gay street to the east side of Holliday street, by widening Orange alley on the north side, as follows:"

(Here follows a description of the proposed widening of Orange alley.)  The notice was published for the first time on the twenty-ninth day of July, 1884, and was continued once a week until and inclusive of September 23rd of same year.  It was also published on the same days in another daily newspaper of the City of Baltimore.

The ordinance was passed on the sixth of October and approved on the eighteenth.

The Court overruled the motion to quash.  A jury was sworn and an inquisition was filed assessing benefits to the two lots above mentioned.  The Central Savings Bank appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, BRYAN, and McSHERRY, J.

*Fred'k J. Brown*, and *W. Burns Trundle*, for the appellant.

*Archibald H. Taylor*, and *Bernard Carter, City Solicitor*, for the appellee.

BRYAN, J., after stating the case as above reported, delivered the opinion of the Court.

The Act of Assembly expressly requires that before any ordinance shall be passed for opening, extending or widening a street in the City of Baltimore, sixty days

notice of an application for its passage shall be given in two of the daily newspapers in the city. The power to pass the ordinance depends on the performance of this condition. In this case the first publication of the notice was more than sixty days before the passage of the ordinance. The statute does not direct that the notice shall be published any specified number of times; it merely requires that it shall be given. A notice may be given once, twice or a dozen times, and it may be repeated at distant intervals; but it is difficult to infer that it must be repeated, from the mere requirement that it shall be given. The statute prescribes a limitation under which the legislative power of the Mayor and City Council is to be exercised. If it were possible for us to change the terms of this limitation, we should be met with a very serious difficulty, when we attempted to define the extent to which we should carry the change. Should we say that the notice was to be published ten, twenty or thirty times? or should we say that the number of publications should be determined by the judgment which we might form of the exigencies of each particular case? The statute by its terms requires only one publication, as a condition precedent to the valid passage of an ordinance of the kind under consideration. If this limitation be considered insufficient, it is in the power of the Legislature to make it more stringent; but Courts ought to be extremely cautious of every construction, which would virtually insert in a statute words which it does not contain. In the present case the notice was published a number of times; but the interval between the last publication and the passage of the ordinance was less than sixty days. The repetitions of the notice were reasonable, as they gave it greater publicity; but they were not required as preliminaries to the action of the City Council. The ordinance as passed conforms in all particulars to the notice. It provides

for doing what the notice states would be applied for.
A different use of capital letters would have attracted
more attention; but as nothing of this kind is required
by the statute, the Court cannot say that it is requisite.
The tribunals of the country are charged with the duty
of keeping municipal corporations within the limits of
the law; but they cannot too resolutely reject every
temptation to exercise legislative power.   It was within
the competency of the Council to refuse to pass the ordi-
nance; and, doubtless, it would have done so, if it had
thought that sufficient publicity had not been given to
the application.   It seems to us that the power to decide
this question, like other matters of public interest and
expediency, may be more safely lodged with the Council,
than with the Courts.   At all events the law has lodged
it there, and there it must remain.   It has been objected
that the proceedings of the street Commissioners were
invalid, because in the interval between the first notice
and the conclusion of the whole work, two of their num-
ber went out of office and were succeeded by other mem-
bers.   We must remember that the City of Baltimore
has very ample power over its streets.   The Act of the
Legislature says that it shall have full power to provide
for laying out, opening, extending, widening, straighten-
ing, or closing up any street, square, lane or alley, as in
its opinion the public welfare or convenience may require.
And when any of these proceedings take place, the
power of assessing damages and benefits is conferred in
very liberal terms.   The right, of course, is reserved to
every owner and possessor to have a jury trial on these
questions.   And it is provided, that before any commis-
sioners appointed by any ordinance shall proceed to dis-
charge their duties in regard to the matters just men-
tioned, they shall give notice, by advertisement, of the
ordinance under which they propose to act at least thirty
days before the time of their first meeting to execute the

same.    Code of Public Local Laws of 1860, Article 4, sections 837 and 839; Act of 1878, ch. 143.    With this limitation on the power of commissioners to act, the whole subject of the assessment of damages and benefits is under the control of the Mayor and City Council, with the right reserved of a jury trial to the parties interested.    But the corporation exercises its functions through officers.    And this particular corporate power is exerted by means of a Board of Commissioners; and the acts of these Commissioners are in no respect personal, but to every intent and purpose official; they are the acts of the corporation.    The Commissioners perform such duties in the execution of the corporate business, as the corporation assigns to them.    The individuals composing the board may be changed, but the public business is not to stop because of a change of officers.    When the term of the Mayor expires and another person succeeds to the office, the new incumbent proceeds to complete the appropriate business of the mayoralty which may have been left unfinished by his predecessor.    And so it is in every department of the City government. All the officers of the city must, of course, be governed by the ordinances defining their duties and powers; but it must not be forgotten that ordinances are intended to promote the public business and not to obstruct it; and their construction must be in harmony with this purpose.    The Commissioners are described as acting as a Board.    (Art. 47, sec. 2, Ordinances, Baltimore City Code.)    By the sixth section of this ordinance they are required to give thirty days' notice of their first meeting; and when they meet, they are directed to proceed to ascertain the damages and benefits caused by the opening of the street, or its widening or extension, as the case may be.    After the assessment is completed, the eighth section requires them to place a full statement of their work in the office of the Register of the city for the inspec-

tion of all persons who desire information of its contents, and it further requires them to give notice of the fact by publication; and that they will meet on a day named to hear objections by persons claiming to be interested; on the day appointed they must hear representations and testimony in behalf of all persons who claim to be interested, and must make such corrections and alterations as shall appear to them, or a majority of them, to be just and proper. After such corrections are made as have been determined on, the statement is to be deposited in the office of the Register, and he is required to give notice by advertisement that the statement has been placed in his office, and that all parties interested are entitled to appeal to the Baltimore City Court. All through the proceedings in this behalf, the work to be performed is the business of the corporation, and the individual Commissioners have no other concern in the matter, than other public servants have in the discharge of their duties. The object of the ordinance is to have the assessments made and proper notices given to persons interested, so that they may be heard to urge any corrections, which they desire to have made; and to appeal and obtain a jury trial, in case they should wish to do so. This object is efficiently secured by the continued progress of the work, notwithstanding changes in the membership of the Board; while on the other hand, if it were necessary to commence anew wherever a change took place, delays, expenses and inconveniences without number would result. No injury whatever can accrue to the property owners from this construction of the ordinance. The determinations of the Commissioners are not binding on them against their will. After all the proceedings are completed, they have a right to appeal to the Court and obtain a hearing and examination of the subject *de novo*, with the benefit of a trial of the facts by a jury. Furthermore, they have an appeal

Central Savings Bank *vs.* Mayor, &c., of Baltimore.

to this Court. Their rights appear to be very well guarded.

A good deal of comment was made in the argument on the nineteenth section of the ordinance. It is in these words: "The said Commissioners for Opening Streets shall proceed to close all their work, notwithstanding they may not be re-appointed, within six months from and after the expiration of the time for which they were appointed by virtue of the first section of this ordinance."

This section was passed when the Commissioners were all appointed annually, and it had the effect of elongating their term of office, so far as the work in their hands was concerned. At present the terms of the Commissioners are for three years; but one goes out of office every year.

In its present position, it is rather out of connection with the rest of the ordinance. It has however the effect of continuing each Commissioner's functions for six months after the expiration of his term of office, if it should be necessary for the completion of the work in hand; and it is a command that it shall be finished within that time. But if this command should be disregarded, we are not to infer that the main purpose and intention of the ordinance will thereby be defeated. It is one of the minor details designed to carry out the general purpose, and is entirely subordinate to it. If neglected, the proceedings of the Commissioners will nevertheless be valid, if in other respects unobjectionable.

*Ruling affirmed.*

(Decided 17th December, 1889.)

A motion was made in behalf of the appellant for a re-argument of the foregoing case, and a printed brief was filed in support of the motion. The motion was overruled by the Court, and the following memorandum was filed by JUDGE BRYAN:

Central Savings Bank *vs.* Mayor, &c., of Baltimore.

At the hearing of the motion for a re-argument of this cause, the Court's attention was called to an Ordinance of the Mayor and City Council, passed in 1887, which changed the tenure of office by the Commissioners. This circumstance would have made no difference in our opinion if the ordinance had been before us. But it was not offered in evidence in the Court below, and was not in any way mentioned in the transcript of the record. The Courts cannot judicially know the ordinances of the City of Baltimore. They must be brought to their attention by being proved in evidence as facts. The forty-ninth section of Article thirty-five of the Code provides, that they may be read in evidence from the printed volumes published by the authority of the corporation. But the evidence must be offered, if it is desired that the Court should take cognizance of them. In most cases, counsel agree that they shall be considered in evidence without any formal offer. But such agreements do not change their essential character, nor dispense with the necessity of referring to them in transcripts of records for this Court. In this particular case, it would be an unjust surprise to the appellant to deprive him of the benefit of the ordinance in question; and if it would have made any difference in our opinion, we should have ordered a re-argument.

(Filed 19th June, 1890.)