# ISAAC S. FIELD *vs.* WILLIAM T. MALSTER, MAYOR, ET AL.

*Municipal Officers— Term of Office of Visitor of Jail— Summary Removal of Municipal Officer— Construction of Ordinances— Ordinances Valid in Part and Void in Part— Admissions of Demurrer— Mandamus.*

When an ordinance prescribes that certain officers shall be biennially appointed in February and shall enter upon their duties on March 1st following, such officers hold for the definite term of two years.

An officer appointed for a fixed and definite term of office cannot be summarily removed without cause unless there is some express provision of law authorizing such a removal during the term.

An ordinance repealed three different sections of a municipal code and re-enacted two of the repealed sections. The sections re-enacted related to appointments to office and the section repealed related to removals from office. The ordinance was invalid as to the affirmative legislation. *Held,* that it was effectual to repeal the section not re-enacted since the two parts of the ordinance were independent, and the statute may be valid in part and void in part.

The admission by a demurrer in one case that a municipal ordinance is in existence, does not beyond the purposes of that particular case, give validity to the ordinance if it has been in fact repealed. The Court does not take judicial notice of municipal ordinances.

Baltimore City Code, Art. 29, sec. 1, provides that there shall be biennially appointed as other city officers are appointed, six visitors to the jail. That Code, Art. 1, sec. 45, provides that all officers of the city except those holding an office for whom a different term shall be prescribed, shall be appointed biennially and enter into their respective offices on March 1st. The city charter (Code P. L. L., Art. 4, sec.

31) provides that all persons holding office under the city of Baltimore shall, unless otherwise provided by law or ordinance, hold their offices during the pleasure of the Mayor. City Code, Art. 1, sec. 46, provided that an ordinance prescribing that officers shall be appointed biennially shall not be deemed to annul the power of removal given by sec. 31. Ordinance No. 13 of 1896 repealed secs. 45, 46 and 47 of City Code, Art. 1, and re-enacted secs. 45 and 47 which related not to the removal but to the appointment of officers. This ordinance was declared to be void as to the affirmative legislation in secs. 45 and 47. The relator was duly appointed a visitor of the jail and was summarily removed by the Mayor before the expiration of his term. Upon a petition for a mandamus for restoration to office, *Held:*

1st. That the relator's term of office as a visitor of the jail was for the definite term of two years.

2nd. That the Mayor had no power to remove him without cause, unless authorized by City Code, Art. 1, sec. 46.

3rd. That City Code, Art. 1, sec. 46, had been repealed by ordinance No. 13 of 1896 and, being no longer in force, the summary power of removal did not exist.

Appeal from an order of Baltimore City Court (PHELPS, J., concurred in by RITCHIE and WICKES, JJ.), dismissing appellant's petition for a writ of mandamus.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD and PEARCE, JJ.

*Thos. Ireland Elliott* and *Edgar H. Gans* (with whom was *Frederick T. Dorton* on the brief), for the appellant.

*Leon E. Greenbaum, City Attorney* (with whom was *John E. Semmes, City Solicitor,* on the brief), for the appellees.

McSHERRY, C. J., delivered the opinion of the Court. This controversy raises the question as to whether the

Mayor of Baltimore City possesses the power to remove summarily and without cause a member of the Board of Visitors of the City Jail. The case was argued with marked ability on both sides, and its importance has caused us to give it the most careful consideration. The power claimed by the Mayor, and actually exerted in this instance, is wide and far reaching, and unless clearly and unequivocally conferred cannot be upheld.

By the charter of the City of Baltimore authority is given to the Mayor and City Council " to provide by ordinance for the appointment, as other city officers are appointed, of visitors or other superintendents of the jail of said city, and to prescribe the powers and duties of such visitors or superintendents." *Code, Pub. Local Laws, Art. 4, sec. 535.* *Section 1, Article 29, of the City Code of 1893,* enacts: " There shall be biennially appointed, as other city officers are appointed, six citizens of Baltimore, to be called the ' Board of Visitors of the Jail of Baltimore City,' and the Mayor shall be *ex-officio* a member of said board." *Section 45 of Article 1 City Code of 1893* declares that " all officers of the City except the Register and any other person holding any office for whom a *different* term may be prescribed in the ordinance creating such office, shall be appointed biennially in the month of February, and shall enter into their respective office on the first day of March immediately following their respective appointments." In 1896 the appellant was appointed by Mayor Hooper one of the Board of Visitors of the City Jail. He was duly confirmed and commissioned and subsequently qualified. He served two years and in March, 1898, he was re-appointed by Mayor Malster and was again duly confirmed and commissioned. He again qualified and entered upon the discharge of his duties. Some time in May or June following, a majority of the Board of Visitors, acting under and in accordance with the authority conferred upon the board by the statutes of the State, convicted, " after a fair and impartial hearing," certain of the officers or employees of the jail of dereliction of duty and requested the warden to discharge

the delinquents. This was done by the warden. Thereupon Mayor Malster instructed the warden to reappoint the men thus removed by the Board of Visitors, and he asked the board to reconsider its action in dismissing them. The appellant refusing to comply with the Mayor's wishes, was invited by the Mayor to resign. He refused to resign, and on July the twentieth the Mayor wrote him as follows: "Sir: I asked for your resignation on July 11 inst., and up to the present time have received no reply. I therefore respectfully notify you that your place as a member of the Board of Visitors of the Baltimore City Jail is declared vacant from this date." The Mayor then appointed Oscar E. Ross to fill the alleged vacancy; and on August the fourth the appellant filed in the Baltimore City Court a petition for a writ of *mandamus* against the Mayor and the warden of the jail requiring them to restore to the relator the rights, privileges and powers of the office of Visitor of the Jail; and against Oscar E. Ross commanding him to cease the exercise of all authority as one of the members of the board. The petition was answered and amongst other things reliance was placed upon *sec. 46*, *Art. 1*, of the City Code of 1893. That section reads thus: "A term of holding shall not be deemed to be created by any resolution or ordinance so as to affect the power of removal given to the Mayor by Article IV, section 31, of the Public Local Laws, because such resolution or ordinance may prescribe that such officer or officers may or shall be appointed biennially or in the month of February, or as other city officers are appointed, or by any other like expression indicating a periodical duty of appointment, and such words shall not be deemed and taken as otherwise provided by law or ordinance so as to annul the power of removal intended to be given by said section." To a part of the answer the relator filed a plea setting forth that *sec. 46* had been repealed by ordinance *No. 13* adopted March 9, 1896; and to the residue of the answer he demurred. The respondents, by way of demurrer to the plea, admitted the passage of ordinance No. 13 as a matter of

fact, but denied, as a matter of law, that its passage resulted in the repeal of *sec. 46.* The case thus stood at issue on demurrer. Upon hearing, the relief sought was denied, the petition was dismissed and the relator appealed.

It is not only conceded that the Mayor undertook and intended to remove Mr. Field from the office of Visitor of the Jail, but it is insisted that he was clothed with full authority to do so. Whether he had such authority depends, *first,* upon the character—the duration—of the relator's tenure; and *secondly,* upon the provisions of the statutes and ordinances pertaining to the power of *removal.* The power of *appointment* to an office is not involved in this case as it was in *Hooper* v. *Creager,* 84 Md. 195, but the power of *removal* is distinctly challenged. By *sec. 31, Art. 4, Pub. Loc. Laws,* amongst other things it is provided that, " All persons holding office under the corporation of the City of Baltimore shall, unless otherwise provided by law or ordinance, hold their respective offices during the pleasure of the Mayor." The power of removal is essentially incident to and included in the power to terminate the tenure of an officer, and the power to terminate a tenure is inseparable from a holding at the pleasure of another. Hence in all cases where either the statute law or the ordinances do not prescribe or fix a definite term of holding, the Mayor may remove the incumbent at any time. We must turn, then, to the charter and the ordinances to ascertain the character of the term of the relator's office.

It is obvious that *sec. 31* just referred to authorizes the municipality to create a definite term of office where no such term is provided by the charter; because the section declares that only such holdings shall be at the pleasure of the Mayor as are not otherwise, that is, definitely, fixed by *ordinance* or by statute. Possessing, then, the power to prescribe a definite term by ordinance, the Mayor and City Council adopted the ordinances we have already quoted from—the one, requiring that six visitors of the jail shall be biennially appointed, and

the other, of later date, declaring that *all* officers, except those for whom a *different* term may be designated, shall be appointed biennially in the month of February and shall enter into their respective offices on the first day of March following. These ordinances read together, as they must be, can mean but one thing. They require a biennial appointment of the Visitors of the Jail, and they prescribe the beginning of the term as the first day of March. These visitors are directed to be appointed in February, their terms begin in March and their successors cannot be selected and cannot assume office for *two* years thereafter. If this does not make a definite term for two years it is difficult to suggest a reason why it does not. The *beginning* of the term is fixed; the time when the successors of the incumbents shall enter is also fixed, and this marks the *end* of the term; and the selections are to be made biennially, and this designates the *duration* of the term. Every element that is necessary to make a definite term is present— the beginning, the end and the duration. Now, *sec. 45, of Art. 1, City Code,* designates this a *term* of office, as contradistinguished from a holding at will, because it fixes two years as the duration of all official terms unless a " *different* term " is named in the character or ordinances. A *different* term obviously means some *term* other than the one defined by this section; and consequently, of necessity, implies *a term.* A *different* term cannot differ from *no* term—there must be *a* term from which it does differ when the two are compared. " The word ' term,' when used with reference to the tenure of office, ordinarily refers to a fixed and definite time and does not apply to appointive offices held at the pleasure of the appointing power." 19 *Am. & Eng. Ency.* 562 K. The words of the ordinances we have been considering or equivalent words have always been construed to create a definite term. *Robb* v. *Carter,* 65 Md. 333; *State* v. *Wayman,* 2 G. & J. 278; *Thomas* v. *Owens,* 4 Md. 218; *Sansbury* v. *Middleton,* 11 Md. 312.

If the relator's term of office be a fixed and definite one, then he cannot be arbitrarily and summarily re-

moved without cause, unless there is some express pro-
vision of law authorizing such a removal during the
term. *Townsend* v. *Kurtz*, 83 Md. 342. Accordingly,
*section 46 of Art. 1, City Code*, which has been quoted
in an earlier part of this opinion, has been relied on as
justifying the removal of Mr. Field. This ordinance
undertook to define the meaning of antecedent enact-
ments. In *Farnan's case*, 85 Md. 598, we called this
ordinance a declaratory ordinance, and we said, in the
same connection, that it was intended primarily to define
what words in the various city ordinances relating to
the appointment of city officers should *not* be construed
to create, or as intending to create, a definite term of
office. But this statement, in view of the context, by
no means meant or can be construed to imply that *sec.
46* was declaratory of what had been, or apart from its
provisions was, the law. It was declaratory in the
sense of defining—interpreting by legislative enactment
—various forms of expression in earlier ordinances, and
in limiting to a narrower scope, phraseology which with-
out such an interpretation or restriction would have
created definite terms, so far forth as to prevent the
Mayor from removing the incumbents without cause.
It accordingly enacted that a term of holding which
would defeat this power of removal by the Mayor should
not be considered as created by an ordinance which pro-
vided that the officer should be appointed biennially,
or in the month of February; but it nowhere undertook
to affirm or declare that apart from its own provisions
placing that interpretation on *such terms* of holding,
those terms of holding had always created only such a
tenure as made the incumbent an appointee at will.
*Farnan's case* does not decide that the ordinance was
declaratory in this latter sense; but carefully restricted
the word declaratory to the sense of defining the mean-
ing ascribed by *sec. 46* to antecedent ordinances. The
ordinance did not, and could not, make a term that
was specifically declared to be a definite term, a mere
holding at the pleasure of the Mayor. The school com-
missioners, with whose tenure we were dealing in *Far-*

*nan's case,* held for a term of *four* years.   This section *46* was set forth and relied on in the answer in that case to show that they could be summarily removed by the Mayor.   We held that the ordinance did not apply be- -cause it was simply declaratory of the meaning—it con- strued the language of other ordinances which did not in express words create definite terms, but created them by general phrases which had always theretofore, and but for that section 46 would still have, been interpreted to intend a fixed term.   No possible reading of section *No. 46* could have made it cut down a *four* years term, expressly declared to be for four years, and convert it into a holding at will.   A four years' term was not with- in any of the categories contained in section 46.

But for *sec. 46* there could, we think, be no pretence that the term of the Visitors of the Jail is anything other than a definite and fixed term of two years.   Nothing besides this ordinance was relied on in the answer or in the argument to convert this definite term into one practically at the pleasure of the Mayor.

The relator by his plea to the respondent's answer alleges that *sec. 46* was repealed on March 9, 1896, by ordinance *No. 13.*   The passage of ordinance No. 13, is, as a matter of fact, admitted, but as matter of law it is denied that its passage abrogated or repealed *sec. 46.* And here lies the main contention in the case.   Ordi- nance *No. 13,* which is brought before us by an agree- ment in the record and is relied on in the pleadings, is entitled "an ordinance to repeal sections 45, *46* and 47 of Article 1, Baltimore City Code of 1893, title 'Mayor and City Council' sub-title, 'City Officers' and to re- enact the same with amendments."   The first section explicitly repeals sections 45, 46 and 47 and re-enacts 45 and 47.   Both 45 and 47 have relation to the *appoint- ment* of city officers.   They—these two sections—to- gether with other ordinances passed during the contro- versy between Mayor Hooper and the City Council, attempted to strip the Mayor of all participation in naming the various officers of the city; and with that end in view they undertook to lodge in a joint conven-

tion of the City Council the sole power of appointment.
Amongst others was ordinance *No. 42* which repealed
and re-enacted *secs. 31 and 32* of *Art. 50* of the City
Code of 1893, and *that* is the particular ordinance which
was before us in *Hooper* v. *Creager*, 84 Md. 195. The
obvious designs of this legislation, of which ordinances
*No. 13* and *No. 42* formed but part, were two-fold. The
one to deprive the Mayor of all authority to make or
to aid in making appointments to office; the other to
repeal the declaratory ordinance which by the construc-
tion it placed on older ordinances might enable the
Mayor to remove a larger number of officers than he
otherwise could have removed except for cause. This
repeal, however, did not interfere with his power to
make removals under *sec. 31, Art. 4, Pub. Local Laws;*
but merely left the power as it had existed prior to the
adoption of *sec. 46 of Art. 1, City Code.* The repeal,
therefore, was simply the repeal of an ordinance which
defined antecedent ordinances. That definition being
abolished these older ordinances were left to be inter-
preted just as they were understood before the adoption
of *sec. 46*—the defining ordinance—and precisely as
though that section had never been enacted. But in
the litigation which grew out of the contest between
Mayor Hooper and the appointees of the City Council,
this Court declared the attempt to strip the Mayor of
his statutory power to make, or to participate in mak-
ing, *appointments* to be abortive, and decided that ordi-
nance *No. 42* was *ultra vires. Hooper* v. *Creager, supra.*
It is now insisted that because *secs. 45 and 47* of ordi-
nance *No. 13,* enacting *affirmative* legislation and plac-
ing in a joint convention of the City Council the power
of appointment, was in effect stricken down by the over-
throw of a similar provision in ordinance *No. 42,* the
*whole* of ordinance *No. 13* must fall, and, therefore, that
the repealing portion—a distinct and entirely independ-
ent provision—cannot be operative or effective. The
argument is, that this legislation was one entire scheme,
and as a part failed the whole must fall. But there
were two distinct and wholly independent objects

sought to be accomplished. One was clearly within
the power of the Council to execute—for, having the
power to enact section *No. 46*, they undoubtedly had
the power to repeal it—the other was palpably *ultra
vires*. The City Council sought to adopt both, and it
does not follow, because that which they were without
authority to pass failed, the measure which they had
the power to enact necessarily fell with it. Such a broad
doctrine might nullify the whole of every statute though
all its provisions, save one, were constitutional. There
was no indissoluble connection between the two objects
of ordinance *No. 13*. There is simply a physical or
accidental connection—they are both set forth on one
sheet of paper. The repeal of *sec. 46* could have been
effected by a separate ordinance without interfering with
*secs. 45* and *47*. And so the latter could have been
amended without touching *sec. 46*. If these distinct
objects—the total repeal of one section, and the amend-
ment of two others—had been dealt with in two sepa-
rate ordinances it would scarcely be contended that the
invalidity of the one caused the other to be inoperative.
Most assuredly such a contention would not prevail
when the alleged invalidity arose from the one being
*ultra vires* whilst it was confessedly within the power of
the municipality to enact the other. In *Berry* v. *B. &
D. Pt. R. R. Co.*, 41 Md. 465, this Court had before it
the *Act of 1874, ch. 389*. That was an act to amend the
charter of the Drum Point Railroad Company. It
amended two sections of the original act of incorpora-
tion and added eight other sections. One of these
sections purported to extend the time for completing
the road and to extend it beyond the date fixed in the
*19th sec.* of the charter; but as printed the time was cur-
tailed. Upon examination of the engrossed bill as it
was finally acted on by the two Houses of the Legis-
lature with the endorsements thereon by the proper
officers and the journals of both Houses, it appeared
beyond doubt that the extension of time as it appeared
in the third section of the Act as that Act was sealed
and approved by the Governor was materially different

from the third section of the Act as it passed the two Houses; and it was accordingly held that this third section, as contained in the approved Act, was null and void. But because the third section was void the whole Act was not declared inoperative. This Court said: " Here as the entire published statute except the third section, was regularly passed by the Legislature and approved by the Governor, there can be no reason for declaring the other portions of it void, because the third section is found to be a nullity. Statutes may be void in part and good in part; and if the part that is valid is entirely distinct and severable from that which is void, the Courts will uphold and enforce the former as if passed disconnected from the latter." And *State &c.* v. *Com. of Balto. Co.*, 29 Md. 521, and *Mayor of Hagerstown* v. *Dechert*, 32 Md. 369, were referred to. See also *Stiefel* v. *The Md. Ins. &c.*, 61 Md. 144, where a *repealing* section of a statute was held valid, and another section of the same statute attempting to enact *affirmative* legislation was held invalid. There is nothing in the case of *State* v. *Benzinger*, 83 Md. 481, at all in conflict with this view. In that case the Act of 1896 was under consideration. The Act by its title purported to repeal an Act of 1894 relating to brokers' licenses. In the body of the Act of 1896 not only was the Act of 1894 repealed, but affirmative legislation was attempted. This was held invalid because not disclosed in the title. If the *repeal alone* had been permitted to stand, there would have been no statute imposing such a license. As it was obvious that the purpose was to substitute the affirmative provisions of the Act of 1896 for the legislation contained in the Act of 1894, and as it was equally clear that for *that* purpose, and that purpose only, the Act of 1894 was repealed; it followed when the affirmative legislation failed, the whole object of the enactment was defeated and effect was, therefore, not given to the mere naked repeal. If the repealing clause had under these conditions been held to be operative, the intention of the Legislature would have been absolutely thwarted, and precisely the reverse of the

situation contemplated would have been brought about. But such is not the case here. The repeal of *sec. 46* did not affect the Mayor's statutory power of removal under *sec. 31, Art. 4, Pub. Local Laws.* Under that section he could still, after the repeal of *sec. 46 of Art. 1 of the City Code* of ordinances, remove at will any appointee holding at his pleasure; and he could remove for cause any other appointee by observing the requirements of the statute. The statute—that is *sec. 31, Art. 4, Pub. Local Laws*—provides for two contingencies; namely, summary removals, and removals for cause, and the repeal of *section 46* of the ordinances left those powers unaffected. Unlike the repeal discussed in *Benzinger's case,* the repeal of *section 46* still left in force ample legislation on the subject of the repealed provision. There was no attempt to substitute some other scheme of removal in place of *sec. 46.* It was unconditionally repealed.

It was argued that the invalidity of ordinance *No. 13* throughout all its provisions, and, therefore, as a repealing ordinance, that is, as repealing *sec. 46,* has been necessarily assumed in *Hooper* v. *Creager,* 84 Md. 195. And the learned and accomplished Judge who decided this case below, stated that ordinance *No. 13* was " void throughout as an inseparable part of a consistent, but *ultra vires* scheme of municipal legislation designed to extinguish the Mayor as a co-ordinate factor in the whole system of municipal officeholders." Certainly there is nothing in the opinion of this Court in that case to indicate that ordinance *No. 13* was dealt with at all. It was in the record as were numerous others. We were, in the *Creager case,* treating solely of the power of *appointment,* not of the power of *removal;* and the whole purpose of the opinion was to show that the City Council could not deprive the Mayor of his statutory right to participate in making appointments to municipal offices. The scheme which was declared *ultra vires* —though we spoke not of it as a scheme—was the effort to deprive the Mayor of his power to appoint. This is made quite apparent upon turning to the opinion on

*page 242.* After stating how the city tax collector and other officers had been appointed and then describing the method prescribed by the new ordinances we said: "Whether this radical change in the method of *appointment* of the city tax collector and of numerous other officers, whereby the Mayor was deprived of all participation in their selection is *ultra vires* or not, is the predominant and controlling question in the case." We proceeded to discuss that question, and that question alone, without adverting in any way to the repeal of *sec. 46* and without suggesting or intimating that the repeal was abortive or ineffectual. The question of its repeal was not before us.

But it is further insisted that *sec. 46* has been judicially recognized as an existing law in a case in which it must necessarily have been considered, and was in fact considered and commented on and made the basis of the Court's decision. In support of this *Farnan's case* is cited. This view results from an entire misapprehension of the case of *Farnan* v. *Hooper.* Mayor Hooper undertook to remove the school commissioners of Baltimore City and to appoint a new board. The litigation in *New* v. *Hooper* and *Farnan* v. *Hooper* was the result. The validity of the appointment of the old board, the duration of the term of office and the power of the Mayor to remove the members, were the questions that arose. To the petition for a *mandamus* in *Farnan's case* Mayor Hooper filed an elaborate answer. The *tenth* paragraph of that answer averred: "That the charter of the City of Baltimore in express terms declared that all municipal officers shall hold their respective offices at the pleasure of the Mayor unless otherwise provided by law or ordinance . . . That for the purpose of construing the language used in said charter provision and to give it the broadest meaning, the Mayor and City Council of Baltimore has heretofore passed the following ordinance contained in *Art. 1, sec. 46,* of the Baltimore City Code of 1893 "—and then *sec. 46* is set out in full. The answer then proceeds to allege that the school commissioners are municipal officers "*subject to this*

*power of removal at the pleasure of the Mayor.*" To this whole answer the relator demurred and thus, for the purposes of that case, by the pleadings, the existence of the section was admitted. This Court had no authority to look beyond the record and to search the ordinances of the city to see whether *sec. 46* had been repealed, as it would have been obliged to do had the enactment been a public general or a public local statute. Courts cannot take judicial notice of the ordinances of municipal corporations—they must be proved as facts— *Central Sav. Bk.* v. *Mayor &c. Balto.*, 71 Md. 515, and so there was nothing left for us to do but to deal with the record as we found it. The ordinance, *sec. 46*, was discussed because the parties by their pleadings had made it a part of the case just precisely as they might have made any other statement of fact. The admission by a demurrer that an ordinance is in existence certainly does not, beyond the purposes of that particular case, give the ordinance vitality, if in fact it has been repealed. To judicially recognize a fact when the fact only appears as a fact by the concession of a demurrer is not a judicial determination that the fact as a fact does exist. Upon demurrer things are treated as facts that are not or may not be facts, and it would be a most singular conclusion if it were held that a Court in dealing with such admissions adjudged the things treated as facts to be facts. It is not a judgment by the Court that they exist. It is an admission by the party demurring that, for the purposes of that case, they exist. The judgment proceeds upon the hypothesis that they exist, but it is not an adjudication that they do exist. The hypothesis binds no person but the party to the case, otherwise a concession made in one case would preclude the whole world from disputing it. In *Farnan's case* we quoted *sec. 46* from the pleadings and then showed that it had no application to the controversy; and we obviously, therefore, did not make it the basis of the decision of that litigation.

We hold, then, *first*, that the term of the appellant as Visitor of the Jail was for two years; *secondly*, that the

Mayor had no power to remove him without cause, unless *sec. 46 of Art. 1, City Code of 1893,* authorized such a removal; and *thirdly,* that *sec. 46* has been repealed and is no longer in force. It follows, therefore, that the order refusing the writ of *mandamus* must be reversed and the cause will be remanded that the writ, as prayed for, may be issued.

> *Order reversed with costs above and below, and cause remanded that the writ may issue as prayed.*

(Decided December 21st, 1898.)