(123 So. 301)

No. 29329.

### SIMMS v. LIUZZA et al.

April 22, 1929. Rehearing Denied June 17, 1929.

John Wagner, McCloskey & Benedict and Henry W. Robinson, all of New Orleans, for appellant.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for appellee Western Union Telegraph Co.

Guion & Upton, of New Orleans, for appellee Liuzza.

ROGERS, J. This is an appeal by the plaintiff, Alpha P. Simms, from a judgment rejecting his demand for damages against John Liuzza and the Western Union Telegraph Company, two of the original three defendants; his demand as to the other defendant, Conrad J. Lececq, state fire marshal, having been voluntarily dismissed on the trial of the case.

The salient facts, as we find them from a careful examination of the record, are as follows, viz.:

The Standard Oil Company of Louisiana, some time prior to the year 1923, purchased a portion of ground, with the building thereon, situated at the corner of Carondelet and Perdido streets in the city of New Orleans, It was the purpose of the company in making the purchase to erect on the site its main office building in this state. The ancient structure on the property, which was badly in need of repairs, had been operated for a number of years as a hotel under various names by various parties. Pending its demolition to make room for the contemplated improvement by the Standard Oil Company of Louisiana, that company leased by an oral agreement its upper floors and a portion of the ground floor to Alpha P. Simms; the plaintiff herein, for a nominal rental of $150 per month. The condition of the lease was that Simms, the lessee, would vacate the premises upon 60 days' notice to that effect from his lessor. Under this agreement, Simms operated the building as a cheap hotel or rooming house, and was so operating it on August 15, 1922, when the Standard Oil Company of Louisiana sold the property to the defendant John Liuzza for the price of $225,000. This sale was made in consequence of the acquisition by the Standard Oil Company of another piece of property in the city of New Orleans more suitable for its purposes. At the time it was effectuated, the vendor, Standard Oil Company of Louisiana, omitted to inform the vendee, Liuzza, of its agreement with Simms. Nevertheless, the matter having subsequently been brought to Liuzza's attention by the Standard Oil Company of Louisiana, he agreed to carry out that company's oral lease with the plaintiff, Simms.

The defendant Liuzza purchased the property solely for speculative purposes, and, as soon as the act of sale was executed, began looking around for an acceptable tenant or

purchaser. In the course of his efforts he was brought into contact with his codefendant, the Western Union Telegraph Company, and entered into negotiations with that company for a lease for a term of years at an annual rental of $30,000, on condition that he would remodel and repair the building in conformity with the desires and purposes of his prospective tenant. At a certain point in the negotiations, the Western Union Telegraph Company concluded that it would be more to its advantage to purchase, instead of to lease, the property, to demolish the building, and to erect on the vacant lot a structure modern in every respect. Accordingly, on March 28, 1923, the Western Union Telegraph Company entered into an agreement with Liuzza to purchase the property for $270,000; Liuzza obligating himself to deliver possession thereof on or before May 1, 1923. Meanwhile, as soon as a tentative agreement had been reached for leasing the building to the Western Union Telegraph Company, Liuzza, through his duly authorized real estate agent, gave Simms, on November 17, 1922, the 60 days' notice to vacate as required by his understanding with his vendor, the Standard Oil Company of Louisiana. In this notice Simms was informed that he might continue his occupancy of the premises after the expiration of the 60 days, provided he would be prepared to remove therefrom at any time on a 10 days' notice.

The agreement of sale between Liuzza and the Western Union Telegraph Company was not registered in the conveyance office of the parish of Orleans until April 2, 1923. Three days after it was entered into, and two days before it was placed of record, to wit, on March 28, 1923, Simms registered his affidavit in the conveyance office, claiming that he held the property under a verbal lease from Liuzza, under date of December 22, 1922, which lease did not expire until October 1, 1923. Thereupon Liuzza, on April 11, 1923, gave Simms a 10 days' notice to vacate, and instituted a mandamus proceeding to have the inscription of Simms' affidavit erased from the conveyance records of the parish as being false, and made solely for the purpose of obstructing relator in consummating his agreement to sell the property to the Western Union Telegraph Company. Simms made no attempt to defend this suit on the merits, relying entirely on a number of technical exceptions to defeat relator's action. The civil district court ordered the inscription erased from the conveyance records, and its judgment, on a suspensive appeal by Simms, was affirmed by the Court of Appeal. See 1 La. App. 487.

Later Liuzza also instituted a suit for possession of premises, which was opposed by Simms. When this suit finally came on for trial, Simms moved for and obtained its dismissal on the ground that, as the building had been demolished, it presented only a moot case.

The building was demolished on orders of the state fire marshal, who, on complaint of the owner of an adjoining building, had examined it and condemned it as a fire hazard. On April 30, 1923, the fire marshal sent a notice to Liuzza, ordering him to demolish the structure within 30 days. On the next day Liuzza transmitted this notice to Simms, who, instead of taking the matter up with Liuzza, applied direct to the fire marshal for a further investigation and the withdrawal of his order. The request was denied on May 4, 1923, on the morning of which day, Liuzza, under the protection of an injunction issued by the civil district court, and after notice to Simms, began the demolition of the building in compliance with the order of the fire marshal. Subsequently, on the applica-

tion of Simms, and after the structure had been demolished, this court passed upon the action of the district court, holding that the preliminary injunction had been improperly issued, since its effect was to oust one claiming to be a tenant in possession. Liuzza v. Simms, 154 La. 339, 97 So. 470. In the meantime, the day after the injunction issued, Simms brought this suit for damages against Liuzza, the Western Union Telegraph Company and the state fire marshal, alleging that these defendants had conspired to illegally obtain possession of the building in question. The suit resulted, as we have heretofore stated, in defendants' favor.

█From the foregoing facts, and other facts appearing in the record, our conclusion is that plaintiff has utterly failed to establish his charge that a conspiracy existed among the defendants to dispossess him by demolishing the building, so that it could be delivered to the Western Union Telegraph Company. Plaintiff's demand against the state fire marshal was dismissed on plaintiff's own motion, presumably because of lack of evidence against that particular defendant. So far as the Western Union Telegraph Company is concerned, it had entered into the agreement to purchase the property prior to the recordation by Simms of his affidavit claiming a verbal lease expiring in the following October. Its interest was merely that of a prospective purchaser, desirous of obtaining a clear title to the property free of any claim by Simms, or of any one else. It is true that, in keeping with this desire, the local counsel of the Western Union Telegraph Company informed its general counsel in New York, from time to time, of the progress of the litigation between Liuzza and Simms, and it is also true that the telegraph company interposed no objection to the demolition of the building on the order of the state

fire marshal, since it was its ultimate intention to clear the site for the erection of its new building, and the salvage from the ancient structure would not exceed the cost of its demolition. But these circumstances, in themselves, are not sufficient to convict the Western Union Telegraph Company of the conspiracy alleged in plaintiff's petition. And the evidence conclusively shows that every effort was made by the representatives of the company to keep it from becoming entangled in the controversy and litigation between Liuzza and Simms. The formal deed to the property was not accepted by the telegraph company until July 5, 1923, at which time the building had been wholly destroyed, and the plaintiff, Simms, was out of and making no claim to its possession, in lieu of which he had filed and was prosecuting the present suit for damages.

█Our further conclusion is that plaintiff's demand against the defendant Liuzza must also fail. Plaintiff's claim that, on December 22, 1922, Liuzza had given him a verbal lease, expiring on October 1, 1923, was wholly discredited and rejected by the court below. We do not find any error in that ruling. The court below likewise held that Liuzza had nothing whatever to do with the complaint to the state fire marshal, his inspection and condemnation of the building as a fire hazard, and his order for its demolition. We think that ruling was also warranted by the facts in the record.

█The case impresses us, as it did the court below, as one in which plaintiff has not come into court with clean hands; that, knowing of the large profit that would accrue to his lessor, Liuzza, either from the lease or the sale of the property to the Western Union Telegraph Company, he endeavored to take advantage of the situation, and to so embarrass and impede Liuzza in his

negotiations with his prospective lessee or vendee as to force Liuzza to make it financially worth his while to voluntarily remove from the premises in order that the transaction might be finally effectuated.

Liuzza, on his part, complied with his legal obligations to the plaintiff. He gave him the 60 days' notice to vacate, as required by his agreement with his vendor, the Standard Oil Company of Louisiana. After the expiration of that delay, he gave plaintiff a further 10 days' notice, as he had obligated himself to do in his previous notice. Nevertheless, plaintiff refused to vacate the premises, and registered in the conveyance office an affidavit, setting up his wholly unfounded claim of a verbal lease. Legal proceedings instituted by Liuzza to obtain possession of the premises were contested and prolonged by plaintiff, without any justification therefor, either in law or equity. In these circumstances, Liuzza is not to be condemned, if he availed himself of the fortunate intervention of the state fire marshal in the affair, and accepted, without protest, that official's order to demolish the building as the most expeditious way of ridding himself of plaintiff and his pretended lease. However, it cannot be said that in this respect Liuzza acted without notice to plaintiff, giving him an ample opportunity to remove from the premises in controversy. The final order of the state fire marshal was issued on April 30, 1923. On the following day, namely, May 1, 1923, Liuzza sent this notice to plaintiff for his information and guidance. Plaintiff, instead of consulting with Liuzza in regard thereto, undertook to convince the fire marshal of his error in issuing the order. He was unsuccessful in this. Not hearing from plaintiff, the defendant Liuzza, two days after he had sent plaintiff the order of the fire marshal, and construing plaintiff's silence as evidence of his intention to persist in his dilatory and obstructive tactics, obtained the injunction from the civil district court to prevent plaintiff from interfering with his demolition of the building in obedience to the order of the fire marshal.

Plaintiff contests the right of the state fire marshal to order ex parte the demolition of Liuzza's building. In Zibilich v. Rouseo, 166 La. 547, 117 So. 586, we said that:

"Section 5 of Act No. 26 of 1914 empowers the fire marshal or his authorized representative, upon complaint of any person having an interest in any building or property adjacent, and without any such complaint, to enter into and upon all buildings at all reasonable hours for the purpose of examination, and whenever any building or other structure which, for want of proper repair, or by reason of age and dilapidated condition, or for any cause, is especially liable to fire, the said fire marshal or his representative shall order the same to be removed or remedied, and such order shall be forthwith complied with by the owner or occupant of the said building."

The fire marshal, therefore, was vested with the power under the law to inspect the building in question for the purpose of determining its condition with respect of its liability to fire, and, if he found such to be the fact, to order the owner to demolish the structure. We do not mean to say that Liuzza, as the owner of the building, could not have appealed to the courts to revise the order of the fire marshal, if it was arbitrary or unjust. But he recognized that the order was justified, accepted it as such, and acted accordingly.

Among the items of damages claimed by plaintiff is one of $5,000 as attorney's fees for dissolving the injunction obtained by Liuzza against plaintiff. The court below

found there was no proof of the value of the services rendered by plaintiff's attorneys in connection with the dissolution of the writ, and disallowed the claim. The ruling was correct. Alfano v. Franek, 159 La. 498, 105 So. 598.

For the reasons assigned, the judgment appealed from is affirmed, at appellant's cost.