GIVNER *v.* COHEN, BUILDING INSPECTION ENGINEER, ET AL.

[No. 168, October Term, 1954.]

24

*Decided July 27, 1955.*

*Petition for modification of opinion, filed July 29, 1955, denied October 5, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Eugene Hettleman,* for appellant.

*Francis J. Valle, Assistant City Solicitor of Baltimore,* with whom was *Thomas N. Biddison, City Solicitor,* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

The appeal in this case is from a decree dismissing a bill for a declaratory judgment filed by the owner of several properties in Baltimore City against the Building Inspection Engineer and the City.

The plaintiff-appellant alleged that a subordinate of the Building Inspection Engineer notified the plaintiff that he (the subordinate), accompanied by representatives of the Health Department and of the Fire Depart-

ment wished to inspect three buildings located close together and owned by the plaintiff, to ascertain whether there were any violation in them of regulations with which their respective departments were concerned, that he wished the plaintiff to accompany them on the inspection and to open any locked portions of any of these buildings, and threatened the plaintiff with arrest if he failed to accompany the inspectors on their survey and to open locked doors as requested. The answer admitted these allegations.

The plaintiff next set up his legal contentions and coupled with them factual allegations to the effect that the defendants' proposed action constituted a fishing expedition unsupported by any reason to believe that there was any violation. These allegations, both legal and factual, were denied, and the defendants also set up affirmative defenses more fully referred to below.

The plaintiff further set forth a claim that a *bona fide* dispute existed between him and the defendants and that he was entitled to a declaratory judgment as to what personnel, if any, might go upon his premises, the circumstances under which they might enter, and whether or not he could be required to accompany the inspectors and open any locked rooms. The prayers of the bill were for a declaratory judgment upon these matters, for an injunction *pendente lite* and for a permanent injunction against the defendants' entering upon the plaintiff's premises without the consent of the occupants thereof.

The plaintiff's other legal contentions as set out in his bill were, in brief, that the proposed or threatened inspections, without either permission or a search warrant and without any cause or reason for such inspections being shown, constituted a violation of his constitutional rights against "unlawful" searches and seizures and also a trespass and a wrongful taking of his property.

The defendants' answer set up as authority for their action and proposed action provisions of Section 74 of the Charter and Public Local Laws of Baltimore City

which were quoted and certain Sections of the Baltimore City Code, 1950 Edition, designated by Article and Section number, those contained in Article 40 being those Sections as amended by Ordiance No. 711, approved May 21, 1953. This ordinance was merely referred to by number and date. Section 74 provides that the Building Inspection Engineer (in his capacity as Zoning Commissioner) "shall exercise such powers and perform such duties as have heretofore been performed by the Buildings Engineer pursuant to Ordinance No. 1247, approved March 30, 1931, or shall hereafter be conferred upon the Building Inspection Engineer by law or ordinance." His past powers and duties under Ordinance No. 1247 are not stated. Section 74 further provides that the "Bureau [of Building Inspection] shall issue such permits for, and exercise such supervision and inspection over, private construction and installations, the use of land and buildings, the alteration, relocation, repair, reconstruction and change of occupancy of buildings and the number of families housed in buildings in the City, and shall have such powers and duties to inspect, repair, condemn and remove private property in Baltimore City at the expense of the owner thereof as are now or may hereafter be conferred upon it by law or ordinance."

For a statement of specific powers of inspection, the defendants rely upon Article 5, Section 120, par. 1202 of the Baltimore City Code (1950). It provides that the Building Inspection Engineer "or his authorized representative, upon exhibiting the proper credentials or proof of identity, if necessary, shall have the right to enter any building, structure or premises at any time during daylight hours, or at such other time as may be necessary in an emergency resulting from or arising out of any cause that endangers or tends to endanger the public health or safety, for the purpose of performing his duties under this Code or enforcing the provisions of this Code."

Finally, the defendants cite Sections 34, 41, 42 and 46 of Article 40 of the Baltimore City Code (1950) which

is a codification of the Zoning Ordinance, as amended in 1953. How these sections aid the defendants is not apparent. Section 34, entitled "Enforcement", deals with permits and authorizes the Zoning Commissioner (the Building Inspection Engineer), in addition to other remedies, in case any building is used in violation of the Zoning Ordinance, "to institute any appropriate action or proceeding" to prevent the use or occupancy of the building in violation of the ordinance. It confers no right of inspection and exacts no consent to inspection as a condition for the grant of a permit. It evidently presupposes that evidence of a violation of the ordinance has already been found, for a violation of the ordinance must constitute the basis for the action or proceeding. Section 41 contemplates a request by the owner for an inspection, and hence his consent to it, in order that he may obtain a certificate of occupancy. Section 42 provides for the issuance of a notice requiring a correction to be made if, after inspection, a building is found not to be in conformity with the ordinance. This section confers no authority to make an inspection. Section 46, which is the general penalty section, does not make refusal to permit an inspection subject to any penalty.

On the plaintiff's motion the case was set for hearing on bill and answer. The decree dismissing the bill was passed in accordance with the following memorandum opinion of the Chancellor:

"Bill of Complaint Dismissed, there being nothing in the record to show any unreasonable search of property occupied by the complainant contrary to the provisions of the constitutional protection. The inspections complained of are necessary for the protection of the public health."

The defendants have moved to dismiss the appeal on the ground that the questions sought to be presented to this Court do not clearly appear to have been decided by the trial court. We overrule that motion, but deem it appropriate to consider whether or not the case as it comes before us is such a case as calls for a declaratory

judgment on any of the questions presented or sought to be presented here or in the trial court.

The effect of the plaintiff's election to set the case for hearing on bill and answer is fully stated in *Miller* on *Equity Procedure,* Sections 255, 256, and in numerous cases both before and since the publication of that work. Any averment of the bill which is denied by the answer cannot be considered. Among the comparatively recent cases supporting this rule, see *County Trust Co. of Md. v. Stevenson,* 170 Md. 550, 185 A. 435. A mere conclusion of law stated in the answer, of course, is not admitted. *Aetna Indemnity Co. v. Baltimore, S. P. & C. Ry. Co.,* 112 Md. 389, 76 A. 251. Applying these rules to the pleadings, the plaintiff's allegation that there was no reason for believing that there is any violation must be disregarded, and it cannot be assumed that the proposed inspections were without such a reason.

We note at this point that questions as to what officials may inspect, whether rented premises should be opened by the landlord and the circumstances under which an inspection may be made are all subordinate to the question whether an inspection may be made without a search warrant; and unless that question is so presented as to call for decision, a decision on the subordinate points would be futile.

Pursuing our inquiry further as to the principal question, we find that the bill does not, on its face, challenge the construction or validity of any ordinance, for it does not so much as refer to any ordinance. Such ordinances as were at all properly drawn in question before the trial court came before that court by virtue of the defendants' answer and by the plaintiff's motion to set the case for hearing upon bill and answer. Courts of this State do not ordinarily take judicial notice of the ordinances of the City of Baltimore. *Central Savings Bank v. Baltimore,* 71 Md. 515, 18 A. 809; *Field v. Malster,* 88 Md. 691, 41 A. 1087; *Shanfelter v. City of Baltimore,* 80 Md. 483, 31 A. 439. These ordinances must be proved as are other facts, except that printed volumes (such as the Code

of 1950 and the Ordinances of 1953) which appear to have been published by proper authority may be accepted as evidence of the law. Code (1951), Article 35, Section 75. Following substantially what was done in the *Shanfelter* case, and taking into consideration the references in the answer and the hearing of the case on bill and answer, we shall give consideration to the ordinances referred to in the answer. Two other ordinances are quoted in the appellant's brief in this Court, but they are not so much as referred to in the pleadings and we regard them as not properly before us.

It is also to be observed that although in his complaint the appellant spoke of intended inspections by officials of the Health Department and of the Fire Department, as well as by a representative of the Building Inspection Engineer, he failed to join the heads of those Departments in the bill.

It is also noteworthy that although his bill suggests, and his brief in this Court emphasizes, rights which occupants or tenants of his buildings may have, the complainant did not join any of them as parties. Yet he seeks an adjudication of their rights.

It is further to be noted that although the plaintiff alleges in his brief in this Court that he occupies a portion of one of the dwellings mentioned in the bill and rents out the balance, he does not make any allegation in his bill of his occupancy of any portion of any of the three properties, other than such as may be inferred or guessed from his giving his address in the caption of the bill as at one of the three buildings mentioned. Consequently, whether any different rule should apply to his home, as distinguished from rental property, is only obliquely presented, if it is presented at all.

The first sentence of Code (1951), Article 31A, Section 11, requires that "all persons shall be made parties who have or claim any interest which would be affected by the declaration * * *." A bill for a declaratory decree or judgment cannot be maintained, at least against a demurrer, without compliance with this section, and

this is so after, as well as before, the 1945 amendment of the Uniform Declaratory Judgment Act. *Caroline Street Perm. Bldg. Assn. v. Sohn,* 178 Md. 434, 13 A. 2d 616; *United Slate Tile & Comp. Roofers v. United Brotherhood of Carpenters and Joiners,* 185 Md. 32, 42 A. 2d 913; *Atkinson v. Sapperstein,* 191 Md. 301, 60 A. 2d 737; *Ashman v. Schecter,* 196 Md. 168, 76 A. 2d 139.

There is also a clear deficiency under another provision of Section 11 of Article 31A. Despite the fact that the plaintiff did not refer to any ordinance in his bill and consequently has not by that pleading and in direct terms challenged the validity of Article 5, Section 120, par. 1202, of the Baltimore City Code (1950 Ed.) it seems clear that the principal issue presented by the bill and answer (considering this ordinance as properly before the trial court) is the validity of that ordinance. The defendants apparently stand flatly upon the unrestricted power of inspection during daylight hours which that section purports to confer. The plaintiff, on the other hand, seems to concede that an inspection may be made under the authority of a search warrant issued on the basis of that section, but denies the right to make an inspection under its authority in the absence of such a warrant. With this interpretation of the pleadings in mind, we find on examination of the record that there has been no compliance with one of the requirements of the second sentence of Code (1951), Article 31A, Section 11, which provides that "In any proceeding which involves the validity of a municipal ordinance, * * * such municipality shall be made a party * * *, and if the * * * ordinance * * * is alleged to be unconstitutional, the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard." See *Pressman v. State Tax Commission,* 204 Md. 78, 102 A. 2d 821. The municipailty has been made a party, it is true; but no copy of the proceeding appears to have been served on the Attorney General of the State. Yet the only ground upon which the right to inspect without a search warrant is denied is a constitutional ground which, if

well taken, would make the ordinance (Article 5, Section 120, par. 1202) unconstitutional insofar as it purports to authorize an inspection without a search warrant, and not in an emergency.

The interest of the State in this constitutional question would seem to be easily shown, if (as the Declaratory Judgment Act does not require) it were necessary to show it. Code (1951), Article 43, section 8, provides that "Each Deputy State Health Officer * * * shall have the right of entry into any workshop, factory, dairy, creamery, slaughterhouse, or other place of business or employment, or *into any private house,* when in pursuit of his official duties." (Emphasis supplied.) Section 400 of the same Article provides that any employee or agent of municipal authorities shall have the right of entry, at all reasonable hours, upon any private premises and into any building within their jurisdiction, while in pursuit of their official duties; and any restraint or hindrance offered to such entry, by an owner or tenant or agent of said owner or tenant, shall be a misdemeanor * * *."

In addition, Section 6, of the Charter of Baltimore City in which powers granted by the General Assembly are set forth, contains several provisions having some bearing on this controversy. (References are to Flack's 1949 Edition of said Charter and Public Local Laws). Paragraph (5) authorizes the City "To enter by its officers or agents, the lands or possessions of any person for the purpose of carrying out the powers enumerated in this Section 6." Paragraph (1) authorizes the City to regulate the * * * use, operation, [and] maintenance * * * of building and structures * * *." Paragraph (7) authorizes the City "To provide for protection against fires, * * *." Paragraph (11) confers power "To provide for the preservation of the health of all persons within the city; * * * and to prevent and remove nuisances." Paragraph (24), subject to a proviso not here pertinent, empowers the Mayor and City Council of Baltimore "To have and exercise within the limits of

Baltimore City all the power commonly known as the Police Power to the same extent as the State has or could exercise said power within said limits." A decision of the questions sought to be raised in this case would thus necessarily have an impact upon the extent of the police power of the State.

Questions arise under both State and Federal law. The only statewide statutory authorizations for the issuance of search warrants to be found in the Maryland Code of Public General Laws (1951) are contained in Article 27, Section 328, and in Article 66 C, Section 121.* The latter deals with search warrants in connection with violations of the game laws and permits some searches to be made in cases of necessity without warrants, but expressly does not authorize the search of a dwelling without a warrant. Search warrants authorized under Article 27 are concerned with criminal offenses. How far, if at all, search warrants may be issued under that Article in aid of health, fire and building inspections is open to question and whether there is any authority for their issuance otherwise is another question. See *Gattus v. State*, 204 Md. 589, 105 A. 2d 661. Neither of these questions is now directly before us.

In addition to questions arising under Article 26 of the Maryland Declaration of Rights, questions also are involved arising under the Fourth and Fourteenth Amendments to the Federal Constitution. The Fourth Amendment is not applicable so as to exclude in a State criminal prosecution relevant evidence obtained as a result of an unreasonable search and seizure, but if a State were affirmatively to sanction arbitrary intrusion by the police into the security of one's privacy, it would run counter to the due process clause of the Fourteenth Amendment. *Wolf v. Colorado*, 338 U. S. 25. See also *Salsburg v. Maryland*, 346 U. S. 545.

---

* Sections 184 (b) and 185 of Article 2B contain provisions for search warrants in liquor cases in certain parts of the State. Section 185 exempts from search private residences used only as such.

. We note that the bill is open to objection for want of parties and that the proceedings are also open to objection for failure to give proper notice thereof to the Attorney General of the State, though no such objections have been made. In addition, two of the three ordinances upon which the appellant asks us to rule are not even properly before this Court.

Beyond these deficiencies, which might be cured by amendment, lies the difficulty of attempting to decide constitutional questions in the abstract. The factual basis upon which the case is submitted, as is shown by what we have already stated with regard to such facts as are presented by the rather scanty record before us, is not such as to lead us to think that this case is ripe for a declaratory decree. The constitutional right which the appellant seeks to invoke is the right to be free from unreasonable searches and seizures. (Incidentally, no question of seizure appears to be involved.) What may constitute a reasonable or an unreasonable search may depend upon many facts, and there are few before us.

The importance of the question as to the existence and the extent of the right of municipal officers to make inspections of dwellings in order to protect the health and safety of the community is obvious. Confronted by a somewhat similar problem, the Supreme Court, in *District of Columbia v. Little,* 339 U. S. 1, disposed of the case (which was a criminal prosecution) on a ground which did not require a decision of the constitutional question, though the latter seems to have been fully argued. In determining to follow this course, the majority opinion states that: "Neither the facts of this case, nor the District law on which the prosecution rests, provide a basis for a sweeping determination of the Fourth Amendment's application to all these varied types of investigations, inspections and searches. Yet a decision of the constitutional requirement for a search in this particular case might have far-reaching and unexpected implications as to closely related questions not now before us." These considerations appear pertinent in

the instant case, though the effect of any decision of ours would, of course, be limited to this State and our decision would be subject to review by the Supreme Court upon Federal constitutional questions.

The appellant rests his case upon *District of Columbia v. Little,* and relies heavily upon the majority opinion in a 2-1 decision in that case by the Court of Appeals of the District of Columbia, reported in 178 F. 2d 13 and 13 A. L. R. 2d 954. Both the majority and the dissenting opinions show the scope of the question and the extensive historical background from which the Fourth Amendment was derived. It would serve no purpose in the present case to review either or both of those opinions or the opinions of this Court in cases such as *Asner v. State,* 193 Md. 68, 65 A. 2d 881, and *Johnson v. State,* 193 Md. 136, 62 A. 2d 249, dealing with Article 26 of the Maryland Declaration of Rights (which condemns general warrants), and its origins, which are much the same as those of the Fourth Amendment. We may note, however, in connection with the *Little* case that two of the Justices of the Supreme Court dissented and favored a reversal of the judgment of the Court of Appeals of the District of Columbia. They would have upheld the action of the District Inspector, in seeking to perform his duties on the ground that they "were of such a reasonable, general, routine, accepted and important character, in the protection of the public health and safety, that they were being performed lawfully without such a search warrant as is required by the Fourth Amendment to protect the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures."

In this case the defendants, on the merits, relied principally upon *Hubbell v. Higgins,* 148 Iowa 36, 126 N. W. 914, which assumed without argument the power of the legislature to provide for inspections of premises in the interest of public health and safety. The particular premises there involved were used as an inn or rooming house. Our own research had developed some other cases

which might be pertinent, among them *Simms v. Liuzza,* 168 La. 714, 123 So. 301, but we are not now passing on the merits of the case.

We have already referred at some length to the decision of the Supreme Court in *District of Columbia v. Little.* We may add that the opinion shows that the decision to determine the case on a ground other than the constitutional question there raised was reached notwithstanding apparently full argument of the constitutional question and the statement that "An impressive array of facts is also presented concerning the uniform practices of agencies of local governments to provide for such general routine inspections in connection with sanitation, plumbing, building, etc." We have not had the benefit of similar data.

Jurisdiction in declaratory judgment cases is not necessarily mandatory, as in cases where such a judgment or decree will not serve a useful purpose or terminate a controversy. *Staley v. Safe Deposit & Trust Co.,* 189 Md. 447, 56 A. 2d 144. Though this Court has exercised such jurisdiction in a wide variety of situations and has recently recognized the declaratory judgment as a new and useful adjunct in the enforcement of recurring or continuing claims (*Turner v. Manufacturers Casualty Ins. Co.,* 206 Md. 601, 112 A. 2d 670), we adhere to the rule most recently reaffirmed in *Tanner v. McKeldin,* 202 Md. 569, 97 A 2d 449, which was itself a declaratory judgment case, that constitutional questions are not to be dealt with abstractly.

In accordance with the views set forth above the decree dismissing the bill will be affirmed.

*Decree affirmed, with costs.*