Newcomer and Stonebraker *vs.* Kline.—1841.

By PRATT for the motion and

By ALEXANDER and TUCK contra;

---

JOSEPH NEWCOMER AND JOHN STONEBRAKER *vs.* ALFRED KLINE.—*December,* 1841.

Upon a contract for a loan of money between K. and N., S. agreed to become bound with N. as his surety in a single bill for its re-payment. K. then advanced the sum, and took from N. and S. their single bill, in which the word *dollars*, was omitted by mistake. Upon a bill filed to correct the

mistake and enforce payment, the money being due, a Court of Chancery has jurisdiction to pass a decree against both, for payment of principal and interest.

Where a party lends money upon an agreement for a single bill from the borrower, with surety, although he may (the bill from defect being void at at law,) sue in *assumpsit* for the money, yet that remedy is not so full and ample as to deny jurisdiction to a court of equity to enforce the original contract.

The consideration of a single bill cannot be enquired into, or a failure of it averred or proved in an action upon it at law.

A specialty cannot rest partly in writing and partly in parol.

A partial ambiguity in a bond cannot be explained by parol evidence.

APPEAL from the equity side of *Washington* County Court.

On the 18th December 1837, *Alfred Kline,* filed his bill alleging, that on or about the 12th of April 1836, a certain *Joseph Newcomer* of said county, applied to your orator to loan him the sum of $310; that your orator agreed to lend him the said sum, provided the said *Newcomer* would give your orator his bond with good security for the same; that the said *Joseph Newcomer* thereupon applied to a certain *John Stonebraker* to become his security in the premises, and the said *Stonebraker* consented and agreed so to do, it being distinctly agreed and understood between the parties, that the said money was to be returned in sixty days. Your orator further shews, that the terms and amount of the said loan being thus agreed upon between the parties, he paid to the said *Joseph Newcomer* the said sum, and the said *Joseph Newcomer,* with the said *John Stonebraker* as his security, then executed to your orator their joint and several single bill, bearing date on the day and year aforesaid, and payable sixty days after date, which is herewith exhibited as part of this bill of complaint. Your orator further shews, that in drawing up the said single bill, the word "dollars" was accidentally and by mistake omitted; that it was intended by the parties that the said word "dollars" should have been inserted in the body of the said single bill, after the words "three hundred and ten," and before the words "for value received," so that the said single bill should contain on the face of it, a promise by the said *Joseph Newcomer* and *John Stonebraker* to pay your orator, sixty days after the date

thereof, the sum of three hundred and ten dollars, for value received. Your orator has applied to the said defendants in an amicable way, and requested them, notwithstanding the said mistake, to pay him the said sum of three hundred and ten dollars, with interest thereon, from sixty days after the date of the said single bill, which they have refused to do.

Prayer for relief against this mistake, its correction, and that defendants may be compelled to pay your orator the sum so loaned, with the interest thereon, as aforesaid; for subpœna, &c., answer, &c.

Exhibit filed with the bill: "Sixty days after date we or "either of us promise to pay to *Alfred Kline* or order, three "hundred and ten, for value received. Witness our hands and "seals this twelfth day of April, eighteen hundred and thirty- "six.                    JOSEPH NEWCOMER,    (Seal.)

JOHN STONEBRAKER,    (Seal.)"

The defendants appeared and demurred to this bill, and assigned the causes of demurrer.

1st. That the said complainant hath not, in and by his said bill of complaint, stated such a cause as doth or ought to entitle him to any such discovery or relief, as is thereby sought and prayed for, from or against them these defendants.

2nd. That if the matters stated in said bill do entitle or give the complainant any cause of complaint against them these defendants, the same is triable and determinable in a court of common law, and ought not to be enquired of by this court as a court of equity.

3rd. That the matters and allegation stated and set forth in said bill of complaint, do not warrant the prayer for relief in said bill as prayed; the prayer in said bill being only for the payment of a sum of money specified in a single bill, exhibited in said case.

4th. That the bill of complaint does not allege and set forth that the facts of which the complainant seeks discovery, are not susceptible of being proved in a court of common law, in an action on said single bill, with proper pleadings and allegations.

5th. That the complainant in said bill of complaint seeks both discovery and relief, which discovery if obtained, can only be had to be used, in an action on said single bill in a court of common law, where all matters for the payment of money only are cognizable.

6th. That the facts and allegations stated and set forth in said bill of complaint, do not give this court cognizance of the subject matter, further than to correct and relieve the complainant against the mistake in said single bill, if there be any mistake.

7th. That the complainant, if he have any remedy in the premises, has a complete remedy in a court of common law.

The cause being submitted for final hearing on the demurrer by consent, on the 26th day of November 1840, *Washington* county court (T. BUCHANAN, A. J.,) adjudged, ordered and decreed, that the defendants pay, or bring into this court to be paid unto the complainant, the sum of three hundred and ten dollars, current money, with interest thereon from the eleventh day of June eighteen hundred and thirty-six, until paid, or brought in as aforesaid, together with the complainant's costs of suit, to be taxed by the register. The defendants appealed.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, J.

PALMER for the appellants contended—

It is not charged in the bill of complaint that *Newcomer*, the principal in the single bill, is insolvent, and unable to pay the money; nor that said appellants, or either of them, denied having borrowed the money; or that it was not justly due and owing to complainant. There is no charge in the bill shewing the necessity of calling upon the parties, defendants, for discovery of facts to be used in an action at law for the recovery of the money lent. To the complainant's bill the defendants filed a demurrer, &c. On the 26th of December 1840, the case was submitted to the *Washington* county court, as a court of equity, without argument, by the agreement of counsel, when the court decreed that the defendants pay, or bring into

the court to be paid, to the complainant, the sum of three hundred and ten dollars, current money, with interest thereon from the eleventh day of June 1836, until paid, or brought into the court as aforesaid to be paid, together with the complainant's costs of suit, to be taxed by the register. This case presents a number of questions for the consideration of the court in relation to the doctrine regulating principal and surety; and before I proceed to discuss the real questions involved in the case, it may not be unprofitable to define some of the leading principles governing these important relations. "The contract of surety takes place where one person, to obtain some trust, confidence or credit for another, engages to become bound or answerable for him." This contract is defined by *Pothier* to be a contract by which a person obliges himself, on behalf of a debtor to a creditor, to pay him either the whole or part of what is due from such debtor, by way of accession to his obligation; or in other words, it is a promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person, *who is in the first instance liable to such payment* or performance of such duty. *Theobold on Principal and Surety*, 1. Wherever the relation of principal and surety subsists, if the surety pays the money, he has a right to be put into the place of the creditor, as to all his remedies for the recovery of the debt from the principal. This right of subrogation, in equity, is based upon a principal of natural justice, which springs into existence immediately the debt falls due, and the surety becomes liable to be called on for payment; and this implied contract also binds the creditor, if required by bill in equity to sue immediately for the recovery of his debt. *King vs. Baldwin*, 17 *John. Rep.* 196. 1 *Sto. Eq.* 322. 14 *Ves.* 162. *Theobold on P. and S.* 186.

Sureties are the favorites of a court of equity, and those courts will never bind them when they are not strictly bound at law. *Ludlow vs. Simond*, 2 *Cain's Cas. in Er.* 29, *per Spencer, J.* They cannot be bound beyond the strict letter of their contract, either in a court of law or equity. *Wright vs. Russel Wilson*, 539. 1 *Durn. and East.* 291. 2 *Harr. & John.* 41.

*Fell on Guaranty*, 116 *to* 123. 2 *Cain's Cases in Error*, 1. If the creditor does any act, or is guilty of any negligence, or omits to do any act which his duty enjoins him to do, and the omission proves injurious to the surety, the latter will be discharged, and may set up such conduct as a defence in an action brought against him in a court of equity. 7 *John. Rep.* 332. 2 *John Ch. Rep.* 554. 17 *John. Rep.* 384. Having thus briefly defined the principles, which as a general rule, regulate cases in which the rights of principal, surety and creditor are involved, I will now proceed to examine the points which I propose to submit to the court in this case for consideration. It is difficult to conjecture upon what principle of equity the decree of the county court can be sustained, there being no allegations in the complainant's bill to give the court jurisdiction to grant the relief prayed, particularly against *Stonebraker*, who is a mere surety, always to be favoured by a court of equity. The only charge in the bill which will be pretended gives jurisdiction to the court is, the mistake in executing the single bill in question, by omitting the word dollars. It will be remembered that in this case, the object of the complainant is the recovery of money only, for which a court of equity will never lend its aid where the party has a remedy at law. He has such remedy, as I will hereafter shew, at least against *Newcomer*, the principal in the single bill. Courts of Chancery, unquestionably have jurisdiction to grant relief in cases of mistakes in written instruments to prevent manifest injustice and wrong, by reforming contracts or instruments of writing, so as to make them conformable to the precise intention of the parties, and to supply defects and correct mistakes, by compelling the parties to make and execute such instruments as was intended. And the court of equity in all such cases, sustain jurisdiction on the ground, that the party complainant is remediless in a court of law. 1 *Fonbl. Equity B, chap.* 1, *sec.* 7, *page* 38 *to* 42. 1 *Story's Equity*, 164. 1 *Mad. Chancery*, 42, 55, 65. The better opinion seems to be, that equity will not in any case grant relief or supply defects in bonds, notes, &c., against mere sureties, where the recovery of money

only is the object of the complainant, except, perhaps, in cases against trustees, executors and administrators of deceased sureties to reach assets in their hands, where the principal is insolvent and unable to pay. 1 *Fonbl.* 42. *Sheffield vs. Lord Castleton,* 2 *Vern. Rep.* 393. *Simpson vs. Field,* 2 *Chan. Cas.* 22. *Bishop vs. Church,* 2 *Ves. Sen.* 101, 371. 1 *Cox' Rep.* 200. *Ludlow vs. Simond,* 2 *Cain's Cases in Error,* 1. It would be in violation of the first principles of a court of equity, in relation to the doctine governing principle and surety, to compel the surety to pay the debt of the principal, when he is perfectly solvent and able to pay himself.

It may be said, that my notions on this subject are impugned in 1 *Story's Equity,* (*new Ed.*) 178, where it is said that a court of equity will, under certain circumstances, in cases of omissions by mistake, grant relief as fully against a surety or guarantee, as against the principal debtor, and to sustain the general remark, *Mr. Story* cites, *Wiser vs. Blakely,* 1 *John Ch. R.* 607. *Bing vs. Radcliff,* 6 *John Ch. R.* 302. *Rowstone vs. Parr,* 3 *Russ. Rep.* 424. *Montville vs. Houghton,* 7 *Conn. R.* 547. *Minge vs. Feilder's Executrix,* 2 *Washington Rep.* 136.

These cases, at least the most of them, if critically examined, will be found fully to sustain my positions; that before a court of equity will grant relief against a mere surety, it must appear that the principal is insolvent, and the debtor remediless at law. In the case of *Wiser vs. Blakely, Chancellor Kent,* in giving his opinion, decides the very question under consideration. He says, "perhaps it would be premature to take an account of the assets in the hands of the executor of the surety, *until the default of the principal and his inability to pay, are fully ascertained.*" This would seem to be conclusive upon this subject. In the case of *Berg vs. Radcliff,* the debtor attempted to reach assets in the hands of the executors of the deceased surety, *William Radcliff,* who was surety for his son *John Radcliff;* and it appears from the case, that *John Radcliff,* the principal, had become insolvent and had been discharged under the insolvent act, and the remarks of the Chancellor, in deciding the case were, certainly, made with reference to that

fact, which is in strict accordance with his opinion in *Wiser vs. Blakely.* So in the case of *Montville vs. Houghton,* it appears from the complainants statement, that *John W. Houghton,* the principal in the bond there in question, had become insolvent, conveyed away his property and removed from the State; and that about the time of his failure he conveyed to *Burrise Thompson,* his surety in the bond, property sufficient to indemnify him from all loss by reason of his suretyship. The other cases referred to by *Mr. Story,* it would seem, do not conflict with the principle contended for. The true principle to be extracted, from a careful examination of all the cases in relation to this subject is, that a court of equity will not lend its aid to correct mistakes or supply defects, in written contracts, against a mere surety, where the relief prayed is the payment of money only, unless it be shewn, that the principle in the contract is insolvent, and unable to pay the debt himself. This seems to be within the very definition of the contract of surety, as before given. The surety promises to pay the debt of the principal in case of his failure to pay, who is in the first instance liable (in equity) to pay. The surety has no beneficial interest in the matter. He merely exercises his bounty and good will in becoming bound, without any consideration, and a court of equity will look into the whole transaction, and see that no injustice is done. The debtor must first look to the principal to obtain his money, and if he cannot be compelled to pay by reason of insolvency, the surety becomes immediately liable in a court of equity. The rule is different in a court of law, where all the obligees are considered principals, as between the obligees and obligors. If the complainant had charged in his bill, that *Newcomer* was insolvent and unable to pay the debt, and that he could not proceed in a court of law without the aid of a court of equity for discovery, the case would present an entirely different question, and would require more consideration than it now does to solve the difficulty.

*Secondly.* The complainant has a complete remedy at law. If the single bill be "void and of no effect," as is charged in complainant's bill, it is as though no single bill had never been

given, and the complainant can sustain an action of *assumpsit* for the money lent, at any rate against *Newcomer*, the principal in the note, to whom the money was lent, and from aught that appears, is entirely solvent and able to pay the money. There is a material distinction between the security given for the money lent, and the contract of lending, and therefore, wherever money has been lent, it may be recovered in an action at law, although the security itself is void. This principle has been carried so far as to enable the lender of money to recover the money lent, when the security given for it is declared void by statute. *Comyn on Contracts,* 384. 2 *Strange Rep.* 1249. 1 *Black Rep.* 26. 2 *Wilson Rep.* 309. *Robinson vs. Bland,* 2 *Burr.* 1077. *Miller vs. Martin,* 19 *John. Rep.* 1. 8 *Cowen,* 24. 4 *Wend.* 654. 22 *Wend. Rep.* 342. Many other cases might be cited to sustain this position, like the cases of notes, &c., where the stamp is omitted, &c.

It is laid down in the books, that at law all the obligors, as between the obligors and obligees, are principals, and are jointly liable for the money lent, they being joint contractors, and joint borrowers. *If this principle can be sustained,* a joint action of *assumpsit* can be sustained in a court of law against both *Stonebraker* and *Newcomer;* that let the case be as it may in relation to a joint action against the principal and surety, it is certain that an action at law can be supported against *Newcomer,* if the single bill be void, as it most certainly is, if the allegations of the complainant be true.

It is further contended, that an action at law can be sustained on the single bill itself, by making proper averments in the declaration, stating that the omission of the word dollars in the single bill was the result of a mistake in writing it, and prove the averments by parol evidence. This course would certainly promote the ends of justice, and would be a proper mode of proceeding, unless, indeed, it conflicts with some settled principle of law in special pleading. This course seems to be warranted by authority. *Per Parker C. Judge, in Brown vs. Gillman,* 13 *Mass. Rep.* 158. *Penniman vs. Barremore,*

*Mart. Lou. Rep.* 497. *Lynn vs. Risburg,* 2 *Dall. Rep.* 180. *Grier vs. Grier,* 1 *Dall. Rep.* 172. *Hunt vs. Adams,* 6 *Mass. Rep.* 519. *Bangs vs. Snow,* 1 *Mass. Rep.* 181. *Vinal vs. Burrill,* 16 *Pick. Rep.* 181. Legal rights must be ascertained by legal means, and courts of equity will never lend their aid where equity and justice do not imperiously demand it. *Bosley vs. McKim,* 7 *Harr. & John.* 160. 7 *Gill & John.* 117.

PRICE for the appellee.

Upon the first point raised by the appellants, namely, that there is a plain and adequate remedy at law, it may be proper to say, that an action of debt was in fact brought upon this instrument, and the court of law decided upon argument that it could not be maintained. This is not referred to as a fact in the cause, but as a decision upon the very case now before the court. It is alleged however, that assumpsit for money lent, or for money had and received, would well lie, as it will lie in all cases where a bond is void, and cannot itself be made the foundation of the suit. But it is submitted that in such case, the action would not be *upon the instrument,* and could only reach the party who had actually received the money. If such therefore should be the only remedy, the surety must be exonerated, and if the principal should be insolvent, as happens to be the case here, the debt would be entirely lost.

To oust this court of its jurisdiction, it is not sufficient to shew merely, that there may be some partial and imperfect remedy at law. If the remedy at common law be not co-extensive with the plaintiff's case, or if it be more adequate, complete, and extensive in equity, the jurisdiction of equity is as perfect as if there were no remedy at law at all. *Coale et ux. vs. Barney et ux.* 1 *Gill & John.* 324. 1 *Story's Eq.* 94. Can therefore a remedy at law be said to be full and adequate, which permits one obligor to escape entirely, and visits upon the complainant an entire loss of his debt?

Supposing however that the remedy at law were full and adequate, there would still, it is submitted, be a concurrent

remedy in this court, in all cases of mistake, which of itself, and intrinsically, constitutes one of the great heads of equity jurisdiction. Thus also fraud is cognizable at law, and to many purposes as efficaciously as in equity, but could it be said that courts of equity are for that reason to be ousted of their inherent jurisdiction in cases of fraud? So also in dower, and in contribution between co-sureties, the jurisdiction of the courts of equity is undoubted, though the courts of common law in the same cases afford redress.

It is said however, that one of these obligors is a surety, and the objection is strongly urged that the principal debtor is not shewn to have been insolvent, which it is contended was necessary as a foundation for the relief which is prayed in this court.

There is a distinction on this subject which the counsel seems to have overlooked, which is, that equity will not alter, vary or extend the contract in order to charge a surety, who by the contract, *as it stands*, is not legally bound; the language of the books being, that, as against a surety the contract cannot be carried beyond the strict terms of it. 6 *John. Chan. Rep.* 309. Upon the same principle a court of equity will not reform a joint bond against a mere surety, so as to make it several against him, *upon the presumption of a mistake from the nature of the transaction.* 1 *Story's Eq.* 178, *pl.* 164. For this would be to render a surety liable by varying the terms of his contract, and this, as *Chancellor Kent* observes, a court of equity will not readily do. 6 *John. Chan. Rep.* 308. But where, as in this case, the object is to supply an accidental omission in the terms of the bond, and to reform the contract, by making it what all the parties intended it to be, it is within the ordinary jurisdiction of this court, to hold the party to his original intention, be he surety, or be he principal. 1 *Story's Eq.* 178. " *A party* who joins in a bond as surety," says *Chancellor Kent*, "is as much bound in law and equity as the principal. Such contracts are of every day's occurrence in the business of life, and recognized as valid in every system of jurisprudence; and it would be most extraordinary, and a very

great blemish in the administration of justice, if the protection of a court of equity was altogether denied to a creditor, requiring equitable assistance against a surety. The surety is, in the contemplation of a court of equity, as much bound as the principal by the terms of his contract." 6 *John. Chan. Rep.* 307.

In the case of *The East India Company vs. Boddam,* 9 *Ves.* 464, *Lord Elden* holds this strong language—"that in a joint and several bond, and as between the obligors and obligees, all the obligors are principal debtors, though as between each other, they may have the rights and remedies resulting from the relation of principal and surety." And this it will be remembered, was in a court of equity.

The distinction already adverted to, is further illustrated by the case of *Sumner vs. Powell,* 2 *Manro Rep.* 36, 37. The object of the complainant in that case was to have a joint deed of indemnity decreed, to be several as to the each of the covenanters, several of whom had executed it without consideration, and were therefore to be regarded as mere sureties. The master of the rolls stated the question to be, whether any other effect could be given to that covenant in equity, than it had at law? and after referring to some of the cases on the subject, he observes, "as it is only a joint covenant that is given, how can I say that it is any thing more than a joint covenant *that was meant to be given?* It is not attempted to be shewn, that there *was any mistake in drawing the deed, or that there was any agreement for a covenant of a different sort.*" The necessary explanation is, that if there had been a mistake in drawing the deed, the case would have been different, and the relief granted. As it was however, the bill was dismissed.

The case of *Crosby vs. Jonathan Middleton et al. Prec. in Ch.* 309, is directly in point. The facts were these: A bond for £500 was sealed and delivered by *Thomas Middleton,* the principal debtor, and *Jonathan* the defendant, as his surety: but *Collison,* who drew the bond, left out *Jonathan's* name. *Thomas* and the plaintiff had several dealings together for many years afterwards, and until *Thomas* failed and went to *Jamaica.*

In May 1700, the obligee came to *Janathan*, and having folded down the bond, shewed him the condition, with his hand and seal, and demanded the money or fresh security, which he agreed to, and proposed *Mr. Rycock*, who demanding a sight of the bond, discovered the mistake, and then dissuaded *Jonathan* from entering into the new bond. *Mr. Bird*, a lawyer, advised him that the bond was void against him. The plaintiff then filed his bill to be relieved against the fraud in *Collison*, and to have a performance of *Jonathan's* last agreement. The bond was a very ancient instrument, and no interest had been paid for forty-nine years.

It was insisted by *Dobyins* for *Jonathan*, that he was never bound; had committed no fraud, but on the contrary was circumvented into the last agreement.

*Lord Keeper.* Your defence will not prevail, for his hand and seal is sufficient evidence for equity to relieve against. I must decree against you on the first agreement: but since forty-nine years is not a sufficient time to ground a presumption in equity, as you would have, you may take an issue, and try payment or non-payment, next assizes.

This case is cited by *Chancellor Kent*, 6 *John. Chan. Rep.* 308, with approbation, and it covers every point material to the plaintiff in this cause.

It was a mere misprision of the clerk who drew the bond, in omitting to insert in the body of the instrument the name of one of the obligors. Here the mistake is more vital to the obligation, for it omits the sum for which it was intended to be given. The case proves moreover, that there is, under such circumstances, no remedy at law, and no difference in equity between the case of a principal, and that of a surety. It proves furthermore, that there is nothing in the objection that the court are asked to pass a decree for the simple payment of a sum of money.

It is true, that in the case of a plain bond for the payment of money, and nothing more, there can be no pretence for applying to a court of equity. But where it is not a bond until this court made it such, it is the uniform course of equity to

decree the payment of the money. The idea is, that the plaintiff may go to equity to have his bond reformed, and then go back to a court of law to compel payment of the money. But this cannot be. Reason and analogy are both against it. 1 *Story's Eq.* 159. In cases of complicated accounts, the court decrees the simple payment of money. So in cases of contribution. So where a bill is filed for a legacy. But the analogies under the head of discovery are more in point, the rule in these cases being, that where the jurisdiction once attaches for discovery, and the discovery is obtained, the court will further entertain the bill for relief, if the plaintiff prays it. 7 *Cranch Rep.* 89.

So where a bill is filed for a discovery of the contents of a lost bond, if the plaintiff entitles himself to the discovery and obtains it, the court will proceed to decree payment of the bond. 1 *Story's Eq.* 81.

STEPHEN, J., delivered the opinion of the court.

We think that the decree of the court below in this case was correct, and ought to be affirmed. The complainant had not full and adequate remedy at law, and was therefore entitled to the relief which he solicited at the hands of a court of equity. The instrument executed by the principal and his surety, was intended to be a joint and several single bill, for the payment of money lent. By mistake and accident, as charged in the bill, to which there was a demurrer, the word "dollars" was omitted by mistake, in consequence of which the plaintiff was deprived of the specific security which was intended to be given, and was unable to support his action upon the single bill, in a court of law, as a specialty. The principle being well settled, that the consideration of a single bill cannot be enquired into, or a failure of it averred or proved in an action upon it at law. 9 *Gill & John.* 342. It is therefore inconsistent with the legal attributes of such an instrument, or its character of conclusiveness, as a specialty, that it should rest partly in writing, and partly in parol. Where the ambiguity is not latent, and raised by extrinsic evidence,

but patent, or apparent on the face of the instrument, parol evidence is not admissible to explain such ambiguity; as where a blank is left for the devisees name in a will, parol evidence cannot be admitted to show whose name was intended to be inserted. *Roscoe on Ev.* 12.

According to contract, the plaintiff was entitled to a securtiy of higher dignity than a mere parol promise. He was entitled to a sealed instrument, the consideration of which could not be enquired into, and although he might have a remedy for his money in a court of law, in a different form of action, it might not be so full, adequate and complete, as the one contemplated by the parties. 7 *Conn. Rep.* 549. In that case a bond was intended to be executed, but the seal was omitted by accident; relief was granted in equity, although it was contended that the party had his remedy at law. The judge in delivering his opinion observing, that the plaintiffs were entitled to a bond, the consideration of which could not be enquired into at law. The remedy might not be adequate.

No doubt can be entertained as to the jurisdiction of a court of equity to correct the mistake in this case, and that such relief will be granted even in the case of a surety. See 1 *John. C. Rep.* 609. The surety in this case is equally bound with the principal for the payment of the money; in a joint and several bond, and as between the obligors and obligees, all the obligors are principal debtors, though as between each other they may have the rights and remedies resulting from the relation of principal and surety. 6 *John. C. Rep.* 309. In the same book 307, *Chancellor Kent* says: a party who joins in a bond as surety, is as much bound in law and equity as the principal. Such contracts are of every day's occurrence in the business of life, and recognized as valid in every system of jurisprudence; and it would be most extraordinary and a very great blemish in the administration of justice, if the protection of a court of equity was altogether denied to a creditor requiring equitable assistance against a surety. The surety is, in the contemplation of a court of equity, as much bound as the principal, by the terms of his contract. So in

page 306, the *Chancellor* says of the surety, by joining in the bond becomes a principal debtor to the obligee, and the debt is presumed to have been created upon the credit given to the surety, as well as to the principal debtor. Upon the whole, we think the decree of the court below is correct and ought to be affirmed.

DECREE AFFIRMED.