## THE AETNA INDEMNITY COMPANY *vs.* THE BALTIMORE, SPARROWS POINT AND CHESAPEAKE RAILWAY COMPANY.

*Bond Executed by Surety and Delivered to Obligee Without Execution by Principal—Mistake—Reformation in Equity—Hearing on Bill and Answer.*

If a surety executes a bond and gives it to the principal to be executed by him, and then to deliver it to the obligee, and the principal does so deliver it, having simply overlooked the fact that he had not executed it, and the obligee accepts it, believing it was properly executed, not observing the failure of the principal to sign it, all three parties believing that it had been regularly executed and intending that it should be, equity has jurisdiction to correct the mistake by compelling the principal to execute the bond.

When a Court of equity reforms a written instrument it can enforce it as reformed, administering full relief.

The C. Company agreed to do certain construction work for a railway company, under a contract which provided that the C. Company should give a bond conditioned for its due performance of the contract. Thereupon, the C. Company gave to the railway company a bond executed only by the Aetna Company as surety, but designed to be executed by the C. Company as principal. The omission of the C. Company to sign the bond was not then noticed by the railway company, and the work was begun. Afterwards the railway company, alleging that the C. Company had failed to comply with its contract, rescinded the same and employed a third party to finish it at a cost in excess of the original contract price. The C. Company having been placed in the hands of a receiver, the railway company brought an action on the bond against that company, the receiver and the Aetna Company as surety. When it was discovered that the bond had not been signed by the officers of the C. Company, the bill in equity in this case

was filed, asking the Court to direct these officers to execute the bond, alleging that the omission so to do was the result of an oversight. The C. Company admitted the allegations of the bill, but the Aetna Company, which had been made a party defendant, filed an answer alleging that the execution of the bond by the C. Company was a condition precedent to liability on its part, and a condition upon which it was delivered to that company; also that the bond was void as to it and that the plaintiff had been guilty of laches. The answer also denied some of the allegations of the bill, and alleged that the Aetna Company had never consented to be bound until after execution by the C. Company, nor to a delivery of said bond prior to such execution, and since said bond was never executed by the C. Company it was a nullity. *Held,* that since the case was heard on bill and answer, when the averments of the answer must be taken as true, the trial Court erred in decreeing the relief asked for, as it does not clearly appear that the railway company is entitled to relief against the defendants.

*Held,* further, that the cause should be remanded, to the end that the bill may be amended and testimony taken, and if it be established that the railway company is entitled to have the bond corrected, the Court may 'dispose of the whole matter in the equity cause.

*Decided January 11th, 1910.*

Appeal from the Circuit Court of Baltimore City (HEUIS· LER, J.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and PATTISON, JJ.

*George Whitelock* and *John B. Deming,* for the appellant.

*Geo. Dobbin Penniman* (with whom was *Joseph C. France* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree directing the Constructing Engineers' Company and its president and secretary, to execute, reform and complete a bond to the Baltimore Sparrows Point and Chesapeake Railway Company from the Constructing Company, as principal, and the Aetna Indemnity Company, as surety. The bill alleges that the Constructing Company had a contract with the Railway Company to build an electric railway, by which the Constructing Company was required to furnish a bond in the penalty of $10,000; that it delivered to the plaintiff, the railway company, a bond with the Aetna Company as surety, which was accepted, but the Constructing Company did not execute it; that the Constructing Company undertook the work, but the railway company finding it could not complete it according to the terms of the contract entered into a supplementary agreement with it, whereby the railway company was authorized to co-operate with it in the completion of the work; that the plaintiff caused the Constructing Company to procure on the same day a writing from the Aetna Company, consenting to the execution of the agreement by the railway company and the Constructing Company * * * the Aetna Company stipulating that its liability should in no event exceed $10,000, as stated in the bond; that a receiver was afterwards appointed for the Constructing Company, but he was not authorized to proceed with the work and the railway company was compelled to enter into an agreement with other contractors for its completion. It also charges that, by reason of having the work completed during winter months, it was much more expensive than it would otherwise have been, and that it cost $18,000 more than the Constructing Company was to receive for it; that a suit at law was brought on the bond, and that within two weeks prior to filing the bill in equity, it was discovered that the bond was not executed by the Constructing Company * * * it being claimed that when the Constructing Company delivered it to the railway company it was not noticed that it had not been executed by it,

and it was placed with the records of the railway company for safe keeping. The bill was filed to require the Con-structing Company to complete the execution of the bond, as it was intended and supposed to be. The bond is dated July 17th, 1905, and the bill was filed March 20th, 1909, against the Constructing Company, its president and secretary, and the receiver.

On April 14th, 1909, the Aetna Company filed a petition in the equity case, asking to be made a party defendant, and to be given an opportunity to appear and answer, which was granted. The receiver answered, stating that he was in-formed and believed that it was the intention of the Con-structing Company to deliver a good and sufficient bond, and the Constructing Company, and its president and secretary, also admitted that such was the intention, and that they thought it had been properly executed before it was delivered. The Aetna Company filed a separate answer, in which it denies many of the allegations of the bill, and neither admit-ted nor denied others. It alleges that the execution of the bond by the Constructing Company was a condition pre-cedent to liability on its part, and a condition upon which it was delivered to that company. It alleges laches, and that the bond is void and of no effect as to it. It explains the sup plemental agreement by saying that it entered into it in the mistaken belief that the bond had been duly executed and delivered,—that the plaintiff as custodian of the bond knew, or ought to have known, that it had not been executed, but failed to disclose the fact until long after the alleged liability had arisen, and after suit thereon at law had been brought.

The case was submitted to the Court on bill and answer, resulting in the decree as above stated, and the Aetna Com-pany took this appeal. We can have no special difficulty about the right of an obligee to have a bond corrected in equity, even against a surety, when the principal has by mere oversight not executed it, after it is given to the principal by the surety to be executed and delivered to the obligee—pro-vided, of course, the circumstances are such as would justify

a Court of Equity in reforming an instrument of writing. If a surety executes such a bond, and gives it to the prin-cipal to be executed by him, and then to deliver it to the obligee, and the principal does so deliver it, having simply overlooked the fact that he had not executed it, and the obligee, believing it was properly executed and not observing that it had not been by the principal, placed it away for safe-keeping with its papers, all three parties believing it had been regularly executed and intending that it should be, it would be a confession of a very limited power to do justice, if a Court of Equity would have to admit that it could not require the bond to be put in the shape it was intended and believed to be by all the parties, merely because one of them was a surety. But we do not understand the powers of a Court of Equity to be so restricted. In *Newcomer* v. *Kline*, 11 G. & J. 457, the word "dollars" was omitted from a single bill, on which there was a surety, by mistake and accident as alleged in the bill, and our predecessors said: "No doubt can be entertained as to the jurisdiction of a Court of Equity to correct a mistake in this case, and that such relief will be granted even in the case of a surety. See 1 *John C. Rep.* 609." The Court passed a decree in the equity case requir-ing the money to be paid, and it also cited *Montville* v. *Haughton,* 7 Conn. 549, which seems to be one of the leading cases on the subject, and said: "In that case a bond was in-tended to be executed, but the seal was omitted by accident; relief was granted in equity, although it was contended that the party had his remedy at law. The Judge in delivering his opinion observing, that the plaintiffs were entitled to a bond, the consideration of which could not be enquired into at law. The remedy might not be adequate." In 24 *Am. and Eng. Ency of Law*, 656, it is said: "Equity may reform instruments against sureties as well as against principals"— citing a number of cases, which we will not repeat here, and on page 654 of that volume, it is said: "A written instrument may be corrected by supplying the omission of the name of a party, or inserting provisions which have been omitted."

We do not deem it necessary to consider the question, whether a surety can be sued at law on a bond, which the principal has not executed. We would regard it as at least extremely doubtful whether such suit should be permitted at law, on a bond such as this, as its form indicates so strongly that it was intended that the principal should sign it, as well as the surety. But as the object of this proceeding is to require the principal to execute it, it is difficult to see how that can affect the surety injuriously, beyond what was intended, if the original intention of the parties as to the execution of the bond be carried out.

But there is a difficulty, as this case is now presented, which we must consider. The case was submitted, as we have seen, on bill and answer. When one is so submitted, the plaintiff admits the truth of all matters stated in the answer, which are susceptible of proof by legitimate evidence. "The answer is to be taken as true in every particular, as well as to the matters alleged by way of avoidance as to those directly responsive to the bill. That is, the defendant is to be allowed the benefit of every fact advanced by him as a defense in his answer, as fully as if it had been put in issue by the plaintiff's general replication and the defendant had established it by proof." *Miller's Eq. Proc.*, pages 317 and 320, and cases cited, also *Read* v. *Reynolds,* 100 Md. 290. Of course, the plaintiff does not thereby admit a mere conclusion of law stated in an answer. As was said in *Barton* v. *Fraternal Alliance,* 85 Md. 14, where the bill alleged insolvency of the corporation, "if the facts admitted in the answer establish that allegation, a mere denial of the insolvency, being the statement of an erroneous conclusion of law, will not avail." All the averments of the answer, whether responsive to the allegations of the bill, or in avoidance of it, are to be taken as true, *Royston* v. *Horner,* 75 Md. 557. "From this it follows that if any averment of the bill is denied by the answer it cannot be considered. Further than this, if any material matter charged in the bill has been neither denied nor admitted by the answer, it stands for

naught. The facts alleged in the bill and admitted by the answer, together with the whole of the answer susceptible of proof, are taken as true." *Miller's Eq. Proc.*, 320.

Now, keeping those principles in mind, how does this case stand? The appellee relies mainly on the seventh paragraph of the answer. After denying knowledge of the facts set forth in the thirteenth and fourteenth paragraphs of the bill, which describe how the appellee got the bond, etc., and denying that it made any representations for the purpose, or with the effect of inducing the plaintiff to believe that the bond was a perfect instrument, when it was received by the plaintiff, and averring that a casual inspection of it would have shown that it had not been executed by the principal. the answer proceeds : "And although this defendant may have signed and sealed the said instrument, and handed it to the said principal obligor for execution and delivery to the plaintiff, intending after such execution and delivery to be bound as surety thereon, it never consented to be bound otherwise, nor to final delivery of said bond prior to execution by the principal, and inasmuch as the said bond was never executed by the said principal obligor, the said bond is, and has always been, a mere nullity." It then denied that it was within the power of the officers of the Constructing Company to execute the said instrument, so as to fix liability on it for damages arising before the bond came into legal existence.

So, although that may be regarded as an admission of the execution of the bond by it, it alleges that it never consented to be bound until after it was executed by the Constructing Company, "nor to final delivery of said bond prior to execution by the principal." These allegations must be taken as proven at a hearing on bill and answer, but beyond that, by the answer the equity of the whole bill is either in effect denied, or neither denied nor admitted, excepting in so far as the above quotation admits the execution of the bond. For instance the answer alleges that the Aetna Company has no knowledge of the facts set forth in paragraphs 1 to 7 inclusive, of the bill, and therefore can neither admit nor

deny them, but calls for full proof of them.   Some of them
may not be very material, but the seventh alleges that the
plaintiff in good faith received the instrument as the prop-
erly executed bond of the Constructing Company, 'with the
Aetna Company as surety, as a performance of the agree-
ment for it to give bond; that it was received without such
scrutiny as to discover the fact that the Constructing Com-
pany had not executed it, and that considering it a good and
binding obligation on the part of both, it was placed with its
records for safekeeping.   Those are material allegations, as
one reason for a .Court of Equity refusing reformation of
an instrument is the negligence of the party seeking the re-
lease, "for equity does not interfere to relieve men of the
consequences of their own carelessness."   24 *Am. & Eng.
Ency. of Law,* 656; *Wood* v. *Patterson,* 4 Md. Chy. 335;
*Kearney* v. *Sascer,* 37 Md. 264.   Another important reason
is laches, 24 *Ency. of Law,* 656.   Still another is the denial,
both by the Constructing Company and the Aetna Company
of the plaintiff being compelled to pay for the completion of
the work the sum of $18,000 in excess of what it was to pay.
The answer of the former alleges that there was no reason for
it costing more than the price at which the Constructing
Company agreed to do the work, and it alleges that the plain-
tiff owes it a large amount of money.

Of course we do not mean to say that such defenses can in
point of fact be established by the evidence, but we have no
means of knowing that they cannot be, and we must accept
the facts alleged in the answer as proven.   If, for example,
it can be shown that the Constructing Company does not-owe
the plaintiff anything for which the Aetna Company would
be liable, why should a Court of Equity correct the bond and
then subject that company to a suit at law?   But whatever
the real facts may be shown to be, we are of the opinion that
as the case is presented, by bill and answer, the plaintiff is
not entitled to such a decree as that passed below.   It is
scarcely necessary to cite authority to show, that, although
Courts of Equity have the power to reform instruments of

writing, and make them conform to the intention of the parties, it can only be done on clear and satisfactory proof. It is true that that rule is generally applied to ascertaining what the contract to be reformed was intended by the parties to be, but the fact that there was a mistake lies at the very foundation of the right to relief. It certainly cannot be said that it is clearly and satisfactorily shown in this case that the plaintiff is entitled to relief, when we remember the effect of the answer.

We are also of the opinion, however, that justice to the parties requires not only that the decree be reversed, but, that the cause be remanded, so that further proceedings can be had. The plaintiff ought to file a replication, and take testimony to sustain such facts as may be necessary, to entitle it to have the bond corrected, if that can be shown. Indeed, it may be better to amend the bill, so far as necessary to have the whole matter disposed of in the equity case, if the Court concludes that the plaintiff is entitled to have the bond corrected. When a Court of Equity reforms an instrument, it can retain control and enforce it as reformed, administering full relief. *Md. Home Ins. Co.* v. *Kimmell,* 89 Md. 441; *Newcomer* v. *Kline,* 11 G. & J. 457; *Miller's Eq. Proc.,* 775; *Phoenix Ins. Co.* v. *Ryland,* 69 Md. 437.

> *Decree reversed, and cause remanded for further proceedings, the appellee to pay the costs in this Court, those in the lower Court to abide the result.*